Claude A. HOFFMAN and Thelma
Ruth Hoffman, Appellants,

v.

Gerold KOEHLER and Linda Koehler,
Husband and Wife, d/b/a Country Living Mobile Home Park, Respondents.

No. 15564.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 30, 1988.

Rehearing Denied Sept. 20, 1988.

Max H. Glover, Webb City, for appellants.

Joseph W. Schoeberl, Collins, Webster and Rouse, Joplin, for respondents.

HOLSTEIN, Chief Judge.

Appellants Claude A. Hoffman and Thelma Ruth Hoffman filed a petition in the Circuit Court of Newton County seeking money damages in the sum of $25,000 and an injunction against respondents Gerold Koehler and Linda Koehler from discharging waste water onto their premises. Following a trial to the court, a judgment was entered denying injunctive relief but granting money damages in the sum of $2,500. From that judgment, the Hoffmans appeal.

The Koehlers are owners of a ten acre tract of land which lies to the north of, and a portion of which is contiguous to, land owned by the Hoffmans. The Koehlers purchased their property in 1982, upon which property was a mobile home court having less than thirty mobile homes.

Since that time, the number of mobile homes has increased to approximately sixty-four. About one-fourth of the Koehler property drains to the northwest. The rest of the property drains toward the south onto the land owned by the Hoffmans.

After the Koehlers bought the property in 1982, they constructed a three-cell sewage lagoon. The construction of the lagoon resulted in the natural drainage being diverted about 150 feet to the west, entering the Hoffman property at a natural draw. The water draining onto the Hoffman property is absorbed into the ground about 300 to 320 feet from where the water enters the Hoffman property.

The Hoffmans presented evidence that there was a field road along the north edge of their property which had been used for many years for access to portions of their property for the purpose of hauling out wood. Prior to the construction of the lagoon, the Hoffmans claim they never had any problem getting across the road in a pickup truck except for a few hours after a heavy rainfall. Following the construction of the lagoon, the Hoffmans assert they could only get through the area on a tractor because of the water. The Hoffmans were able to use the road for a period of time when Mr. Koehler put a pipe under the road. However, on advice of counsel, Mr. Hoffman had Mr. Koehler remove the pipe.

Mr. Hoffman testified that the water "leaves a black residue that stinks to high heaven." However, there was no evidence that the water contained any pollutants or matter detrimental to health. The Hoffmans called only one non-party witness, a real estate appraiser, who testified regarding the smell. He stated that the odor he smelled was from a stick which he shoved approximately fourteen inches into water and mud where the water drained onto the Hoffman property. Mrs. Hoffman admitted that there had been no complaints of odor by family members attending barbecues at their residence. The residence is about 1,000 feet from the point where the water from the lagoon enters the Hoffman property.

Witnesses called by the Koehlers testified there was no odor and that the discharge from the lagoon was monitored by the State for bacteria. The Koehlers called an expert witness who testifed that the average water discharged from the lagoon each day was approximately 8,400 gallons. Following the general usage and discharge patterns, this would result in most of the water being discharged between 6:00 and 10:00 a.m. and 5:00 and 10:00 p.m. The Joplin city sewer system was projected to eventually serve the Koehler property. According to the expert, any sewage treatment system chosen to service the trailer park within the next five to ten years would discharge the same volume of water.

On this evidence, the trial court made a specific finding of fact that the drainage from the lagoon could not be obviated by the Koehlers without terminating the operation of their mobile home park. The court further found that while there was a permanent nuisance, abatement was not reasonable or practical under the circumstances. In balancing the interests between the parties, the court decided that the serious inconvenience and economic loss to the Koehlers outweighed any corresponding advantage to the Hoffmans which might result if an injunction were granted. The court denied injunctive relief and found that the Hoffmans had suffered only nominal damages which the court determined to be $2,500. From a judgment in that amount, the Hoffmans appeal.

On appeal, the Hoffmans urge that the trial court erred in denying the injunction and limiting damages to $2,500. In their "Points Relied On," they include four subordinate claims of error.

■ The first three points fail to comply with Rule 84.04(d).[1] That rule requires that "[t]he points relied on state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...." The Hoffmans first three points

---

1. Unless otherwise indicated, all rule references are to Missouri Rules of Court (19th ed. 1988).

relied on only accuse the trial court of error in (1) finding that the drainage cannot be obviated without enjoining operation of the mobile home park, (2) authorizing the Koehlers an easement for sewage purposes, and (3) granting permission to the Koehlers to increase and divert the water flowing onto the Hoffman property. Nothing in the points suggests wherein and why these purported actions of the trial court are erroneous. In addition, the second and third points do not contain a statement of the challenged rulings of the trial court, but merely recite inferences drawn by the appellants from the trial court's ruling. The trial court made no ruling or judgment specifically "authorizing ... an easement for sewage" or "permitting" an increase in the flow of water.

■ The three components of a point relied on are (1) a concise statement of the challenged ruling of the trial court, (2) the rule of law which the court should have applied, and (3) the evidentiary basis upon which the asserted rule is applicable. *Thummel v. King,* 570 S.W.2d 679, 685–86 (Mo. banc 1978); *Black v. Cowan Const. Co.,* 738 S.W.2d 617, 619 (Mo.App.1987). The second criterion is missing in appellants' first three points.

■ The requirements of Rule 84.04(d) are mandatory. *Black v. Cowan Const. Co., supra.* Merely stating in a brief on appeal what the alleged errors are, without stating why they are errors, does not satisfy Rule 84.04(d) nor does it preserve the question for review. *Big Valley, Inc. v. First National Bank,* 624 S.W.2d 193, 194 (Mo.App.1981).

The rationale for Rule 84.04(d) has been explained as follows:

> The requirement that the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts. It is rooted in sound policy. Perhaps the most important objective of the requirement relative to points relied on is the threshold function of giving notice to the party opponent of

the precise matters which must be contended with and answered.

*Thummel v. King, supra,* at 686.

In the past where the points relied on were insufficient, this court has winked at the violation of the rule on briefs and considered the points on appeal. *Black v. Cowan Const. Co., supra,* at 619–20; *Sours v. State,* 692 S.W.2d 2, 3 (Mo.App. 1985). Under provisions of former Rule 84.08,[2] we excused violation of the briefing rules absent notice of the violation accompanied by an opportunity to correct it. Those provisions of former Rule 84.08 were repealed, effective January 1, 1988.

■ Notwithstanding the failure to preserve the questions for review, we will look to the argument portion of the brief under the first three points for the purpose of determining whether there has been plain error affecting substantial rights which, though not properly preserved, may have resulted in a manifest injustice or a miscarriage of justice. Rule 84.13(c).

By referring to the argument under the first point, we glean that the Hoffmans complain the evidence does not support the trial court's finding that the drainage of water onto the Hoffman's property could not be obviated unless the operation of the mobile home park was enjoined.

■ In this court-tried case, the trial court's judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law; setting aside a decree because it is against the weight of the evidence is done with caution and only with the firm belief that the decree is wrong. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We defer to the trial court on questions of the credibility of witnesses and the choice between conflicting evidence. Rule 73.01(c)(2).

■ Expert testimony was presented from which the trial court could find that the only reasonable methods for providing sewage treatment for the mobile home

2. Missouri Rules of Court (18th ed. 1987).

park were either a lagoon or an on-premise sewage treatment plant, neither of which would change the volume of water being discharged into the natural drainage system. There was no evidence that it was feasible to construct the lagoon in such a manner so as to divert the water draining from the lagoon onto property other than the Hoffmans. The only other potential method for handling the sewage from the mobile home park was to wait five to ten years for the Joplin city sewage system to be extended and reach the Koehler property. Thus, the trial court's finding that the drainage could only be obviated by terminating operation of the mobile home park is supported by substantial evidence.

The argument under Point II suggests that the trial court erred in denying injunctive relief because failing to do so necessarily implied that the respondents had been granted an easement to drain water across the appellants' property. The argument assumes that without the establishment of an easement, under principles of prescription or condemnation, no right to drainage exists from the Koehler's land onto the lower lying Hoffman land. That is simply not the law.

■ The discharge of surface water into the natural drainage system which flows onto an adjoining landowner's property does not require an easement across the adjoining landowner's property. "Surface water is a common enemy which every man may ward off his land and thus throw it on an adjacent or lower owner, provided he does not, in warding it off, unnecessarily collect it and discharge it to the damage of his neighbor." *Keener v. Sharp*, 341 Mo. 1192, 111 S.W.2d 118, 120 (1937). Thus, the failure of the trial court to enjoin the Koehlers from draining water onto the Hoffman property does not necessarily mean the court granted an easement for drainage of surface water.

■ Presumably the complaint under Point III is that the court erred in failing to grant an injunction when the evidence shows the Koehlers had changed the point of entry and increased the amount of water discharged onto the Hoffman property.

The appellants' claim of error is apparently based upon their misconception of the law that the increase in the discharge of water and the change in the point of discharge automatically entitles them to injunctive relief.

Nothing in the pleadings mentions a change in the location upon which water flows onto appellants' land. The evidence is silent as to the significance of the fact that the water now flows down a draw entering the Hoffman property approximately 150 feet from the point at which drainage had formerly entered the property. Expert evidence indicated the draw is part of the natural drainage system. The modest change in location was not shown to have any impact on the value or usage of the Hoffmans' land.

■ It is the quantity of the discharge that lies at the center of the dispute. Obviously there is evidence of an increase in the quantity of water being discharged onto the Hoffman property after the lagoon was constructed. An actionable case against one who casts surface water onto adjoining property exists if (1) the surface water is collected in an artificial channel or volume and discharged in increased or destructive quantities to the damage of the lower lying property, (2) the drainage off of surface waters is done in such manner as to exceed the natural capacity of the drainways, or (3) the landowner discharges surface waters onto adjacent lands to which it would not naturally drain. *Looney v. Hindman*, 649 S.W.2d 207, 211 (Mo. banc 1983). If the Hoffmans have an actionable claim, it is under the first described situation. The granting of a remedy under that situation is predicated upon a determination that the lower owner has sustained "substantial injury." *Polich v. Hermann*, 219 S.W.2d 849, 855 (Mo.App. 1949).

An injunction is not mandated in every case. As stated in *Clark v. City of Springfield*, 241 S.W.2d 100, 106 (Mo.App. 1951) (quoting *Crutcher v. Taystee Bread Co.*, 174 S.W.2d 801, 805 (Mo.1943)):

"Necessarily each case [of nuisance] must stand upon its own special circumstances, and no definite rule can be given that is applicable in all cases, but when an appreciable interference with the ordinary enjoyment of property, physically, is clearly made out as the result of a nuisance, a court of equity will never refuse to interfere."

In determining whether the Hoffmans had suffered an appreciable interference with the ordinary enjoyment of their property justifying a mandatory injunction, the trial court apparently relied on the "relative inconvenience or comparative injury" doctrine. This court explained the doctrine in *Hanna v. Nowell*, 330 S.W.2d 595, 602–03 (Mo.App.1959), as follows:

> But even though there be infringement and the plaintiffs are not estopped, it is not every case in which equity will issue a mandatory injunction.... This remedy, which is said to be "the strong arm of the court," is a matter of discretion, to be applied with caution and used sparingly. It will not usually intervene in trivial matters, or where the injunction will work little benefit to plaintiff and cause oppression or great hardship to the defendant. In such cases the plaintiff is relegated to his legal remedy. It is impossible to lay down any absolute rule to govern the exercise of this discretion in all instances. Each case must be judged upon the equities as they appear from its own facts. In such instances the courts have considered, in addition to the balance of the conveniences, the "willfulness" of the defendant and the conduct of the plaintiff in regard to acquiescence, laches, and unclean hands....

Under the doctrine, the grant or denial of an injunction rests within the sound discretion of the trial court. *Duke v. Crossfield*, 240 S.W.2d 180, 183 (Mo.App.1951). The doctrine has been applied in cases involving the discharge of water from sewage disposal system to justify a denial of injunctive relief even though the plaintiff may have suffered nominal damages. *Barber v. School District No. 51, Clay County*, 335 S.W.2d 527, 530–531 (Mo.App.1960).

The trial court's conclusion that the Hoffmans' damage is nominal in comparison to the substantial inconvenience and loss which would result to the Koehlers, and its resulting refusal to grant an injunction does not amount to an abuse of discretion. Point III is denied.

The one point properly preserved for our consideration is Point IV under which the Hoffmans complain that the trial court erred in granting them $2,500 damages in view of the testimony of one witness that their damages were approximately $10,000. The Koehlers presented conflicting evidence as to the value of the Hoffman property. As previously noted, in court-tried cases we give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Conflicts in the evidence are for the trial court to resolve, we take the facts in accordance with the result reached, and the trial court may believe all, part, or none of the testimony of the witnesses. *Arnott v. Kruse*, 730 S.W.2d 597, 598 (Mo.App.1987); *Best v. Culhane*, 677 S.W.2d 390, 393 (Mo.App. 1984). The failure of the trial court to enter a judgment for damages in excess of $2,500 is not erroneous.

We find no error in the trial court's judgment. Accordingly, it is affirmed.

CROW, P.J., and GREENE, J., concur.