**Maurice C. JEFFERSON, Jr., Lee Anna Jefferson, Plaintiffs/Appellants,**

v.

**James P. BICK, individually, and The Bick Corporation, and Daniel P. Callahan, individually, Defendants/Respondents.**

No. 63658.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 15, 1994.

Rehearing Denied March 15, 1994.

Raymond F. Buckley, Jr., Anne Walker, The Law Office of Warren W. Friedman, St. Louis, for plaintiffs/appellants.

James Patrick Bick, Jr., La Tourette, Schlueter, Ebling & Byrne, Clayton, for defendants/respondents.

CRANE, Presiding Judge.

Plaintiffs, owners of an automobile, filed an action against defendants for conversion and replevin of the automobile. Defendant Bick Corporation filed a counterclaim against plaintiff Lee Anna Jefferson on her promissory note and against both plaintiffs to establish an equitable lien in its favor on the automobile. After a bench trial the trial court entered judgment in favor of defendants on the conversion counts and in favor of plaintiffs on the replevin count. It entered judgment on the counterclaim against Lee Anna Jefferson on the promissory note and against plaintiff Maurice C. Jefferson, Jr. on the equitable lien count in the amount of the promissory note.

Plaintiffs appeal the entry of judgment in favor of defendants on the conversion counts and the entry of a money judgment against Maurice Jefferson on the equitable lien count. They also claim the trial court erred in failing to issue findings of fact and conclusions of law. Defendants have moved to dismiss on the grounds that plaintiffs' brief fails to comply with Rule 84.04. We agree

plaintiffs' brief fails to comply with Rule 84.04(d). However, we have gratuitously reviewed the issues for plain error. We find the trial court plainly erred with respect to its entry of a money judgment against Maurice Jefferson on the equitable lien count. Accordingly, we reverse that portion of the judgment and affirm the remainder of the judgment.[1]

Because plaintiffs challenge the trial court's judgments in favor of defendants, we recite the evidence in the light most favorable to defendants. In 1986 plaintiff Maurice Jefferson and his mother, plaintiff Lee Anna Jefferson, purchased a 1982 Lincoln Mark VI automobile which was jointly titled in both names. Plaintiffs financed the automobile through General Motors Acceptance Corporation (GMAC). Lee Anna Jefferson was the principal user. GMAC repossessed the vehicle on October 31, 1988 after plaintiffs failed to make monthly payments. GMAC notified Lee Anna Jefferson that she could reclaim the vehicle by paying the balance of $8,041.28 by November 14, 1988.

Lee Anna Jefferson was employed by defendant Bick Corporation. She advised defendant James P. Bick, President of Bick Corporation, and defendant Daniel P. Callahan, Bick Corporation's comptroller, of her need for a loan to reclaim the Lincoln. Bick Corporation agreed to reclaim the Lincoln. The parties agreed the Lincoln was to be sold and the proceeds applied to repay Bick Corporation and to make a down payment on a less expensive automobile. On November 14, 1988 Bick Corporation reclaimed the Lincoln by paying GMAC $8,041.28 and delivered the car to a dealer for resale. On the same date Lee Anna Jefferson signed a promissory note in favor of Bick Corporation for $8,041.28, due on demand.

Lee Anna Jefferson signed a release acknowledging return of the Lincoln and releasing GMAC from all claims in connection with the retaking or condition of the automobile. Lee Anna Jefferson also signed a blank power of attorney to convey title to the Lincoln.

After November 14, 1988 Lee Anna Jefferson asked James Bick to not sell the Lincoln because she wanted to get a loan approved with which she would pay back the full $8,000.00. He told her she would not be able to get a loan and the car needed to be sold so she could get another car and have transportation to work. Lee Anna Jefferson then asked him to co-sign for a loan for her which he refused to do. On December 21, 1988 Lee Anna Jefferson resigned from her employment. On January 13, 1989 defendant Bick Corporation, through its attorney, demanded payment of the promissory note. On January 26, 1989 plaintiffs filed this action.

Defendants have moved to dismiss the appeal for failure to comply with Rule 84.04. The motion is well taken with respect to the failure of the points relied on to state wherein or why the trial court erred as required by Rule 84.04(d). The points are as follows:

I.

THE TRIAL COURT ERRED IN FINDING FOR THE RESPONDENTS ON COUNT I OF APPELLANTS' FIRST AMENDED PETITION IN THAT APPELLANTS PROVED ALL THE ELEMENTS OF A CONVERSION ACTION AND ARE ENTITLED TO RELIEF AS TO COUNT I OF APPELLANTS' FIRST AMENDED PETITION.

II.

THE TRIAL COURT ERRED IN GRANTING A MONEY JUDGMENT AGAINST APPELLANT MAURICE C. JEFFERSON, JR., UNDER COUNT II OF THE AMENDED COUNTERCLAIM OF RESPONDENT BICK CORPORATION.

III.

THE TRIAL COURT ERRED IN DENYING THE REQUEST FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW.

1. The judgment on the replevin count has not been appealed.

■ The three components of a point relied on are (1) a concise statement of the challenged ruling of the trial court, (2) the rule of law which the court should have applied, and (3) the evidentiary basis upon which the asserted rule is applicable. *Thummel v. King*, 570 S.W.2d 679, 685–86 (Mo. banc 1978); *Hoffman v. Koehler*, 757 S.W.2d 289, 292 (Mo.App.1988).

■ The requirements of Rule 84.04(d) are mandatory. *Hoffman*, 757 S.W.2d at 292. Merely stating in a brief on appeal what the alleged errors are, without stating why they are errors, does not satisfy Rule 84.04(d) and does not preserve the question for review. *Id.*

Point I fails to state "wherein and why" the trial court erred because the explanation it provides is conclusory and fails to set out what rule of law the court should have applied and the evidentiary basis for it. Points II and III do not state wherein or why the trial court erred. *Carthen v. Jewish Hosp. of St. Louis*, 694 S.W.2d 787, 796 (Mo.App. 1985). However, in lieu of dismissing this appeal, we will *ex gratia* review plaintiffs' points for plain error.

## I.

Under Point I plaintiffs argue that they proved the elements of conversion. Plaintiffs list the elements of conversion as follows:

Proof of conversion can be shown either by (1) a tortious taking, or (2) by any use or appropriation of the use of the person in possession, indicating a claim of right in opposition to the rights of the owner, or (3) by a refusal to give up possession to the owner on demand.

*West County Internal Medicine, Inc. v. Domian Standard Service, Inc.*, 725 S.W.2d 116, 118 (Mo.App.1987). Plaintiffs further quote *Maples v. United Savings and Loan Assn.*, 686 S.W.2d 525, 527 (Mo.App.1985) as follows:

Obviously, if the owner consents, there is no unauthorized taking. That consent can be express or implied [Citations omitted].

"Implied" means necessary deduction from the circumstances, general language or conduct of the parties [Citation omitted]. "Implied consent" is that manifested by signs, actions or facts, or by inaction or silence which creates an inference that consent has been given [Citation omitted].

They argue that the trial court could not have found that plaintiffs consented to the taking of the Lincoln as required by *West County* and *Maples*.

■ On review of a court-tried case, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ In this case there was substantial evidence that plaintiffs consented to Bick Corporation's possession of the automobile. Daniel Callahan testified that the understanding with Lee Anna Jefferson was "that the car would be sold and that the proceeds would then be used to pay down the monies we had put forward in order to put her in a smaller ... less expensive car, something that she could better afford." He heard James Bick tell Lee Anna Jefferson that "he would advance the money to redeem the car so that we could then take it to the dealership and sell it to reduce that amount of the loan and get Lee Anna into more reasonable—or cheaper transportation." Callahan testified that Bick said the dealership had a number of used vehicles which might be appropriate. He heard Lee Anna Jefferson agree to James Bick's proposal taking the car to be sold and getting another one.

James Bick testified to the agreement as follows:

A. I said to LeeAnna that I would loan her $8,000 on a temporary basis only, and that the car would be brought to Volkswagon–BMW agency and that we would "Ask them to help you get into a car that would be around $4,000," meaning after we had settled the note.

Q. So what would be done with the Lincoln? Would it be sold?

A. It would be sold.

Q. And would the loan proceeds be used to pay down the $8,000 loan?

A. Yeah. And it was my impression, and I talked as clearly as I could with LeeAnna to make sure that she understood why I was going out to redeem this car, the only reason I was redeeming this car was that I would loan her somewhat considerably lower amount of money, and I would not loan her $8,000.

Q. All right. Did she agree to that, Mr. Bick?

A. Yes, she did.

Q. Why did you agree to make that loan transaction with LeeAnna? Why did you do that?

A. Because LeeAnna was a good employee.

Q. Okay. Were you—

A. And I wanted to keep her and I thought she did a very good job. And basically, as the man from BMW testified, if the car was repossessed, her credit would be extremely bad.

Q. Okay.

A. They would also garnishee her wages, which would make it very difficult for her to work there. And if she didn't have a car, then she would be literally gone as an employee. And I thought it would be a tough situation for her.

On the dealer's instruction he had Lee Anna Jefferson sign a power of attorney to transfer title.

Larry Frey, business manager of the dealership where the Lincoln was taken, testified that James Bick had told him that he had a valued employee whose vehicle had been repossessed and he wanted to do something for her. Bick asked Frey if it would "be advantageous to Mrs. Jefferson for him to reclaim that car or to just let GMAC have it and write it off as a charge-off." Frey told Bick that it would help the employee's credit if the vehicle was reclaimed, but that the vehicle was worth less than the outstanding loan. He said Bick was concerned that she could not work without transportation. They decided the best course would be to sell the Lincoln to recoup some of the losses and apply any monies made on the sale towards the $8,000 loan and the purchase of another vehicle for Lee Anna Jefferson. Frey further testified that on November 11, 1988 Lee Anna Jefferson called and gave him financial information to be used for a credit application for financing a vehicle. The information was also to be used to determine what type of vehicle she could afford.

Lee Anna Jefferson admitted giving the credit information to someone from the dealership and signing the power of attorney. She testified that her son, Maurice Jefferson knew of the delinquent payments and knew she was attempting to get loans. She further testified that she was acting for both of them.

Maurice Jefferson testified that on the day the Lincoln was reclaimed he found out that Bick Corporation had loaned his mother the money to keep the car from being sold at foreclosure and that he discussed the loan with his mother. He testified his mother was acting on his behalf "with respect to that car when she was negotiating these transactions," that he knew his credit would be damaged if GMAC repossessed and sold the car, that he did not want that to happen, and that he was happy that Bick Corporation loaned enough money to stop the foreclosure.

There was substantial evidence that Lee Anna Jefferson expressly consented to placing the Lincoln for sale with the dealership and that Maurice Jefferson, her son, impliedly consented to the transaction by letting his mother negotiate on his behalf. The trial court did not err plainly or otherwise in entering judgment for defendants on Counts I and II for conversion. Point one is denied.

## II.

■ For their second point plaintiffs assert the trial court erred in awarding Bick Corporation a money judgment against Maurice Jefferson on Count II of the counterclaim. They argue that Bick Corporation only sought the declaration of an equitable lien in Count II and no equitable lien could be imposed with respect to Maurice Jefferson because he had no legal obligation to pay the promissory note executed by his mother.

In Count II of its Amended Counterclaim, Bick Corporation alleged that Lee Anna Jefferson made and delivered to it a promissory note in consideration for Bick Corporation's loan to her of $8,041.28 to prevent the sale of the 1982 Lincoln. It further alleged that the purpose of the loan was to protect the interest of both plaintiffs and the loan created an equitable duty on the part of both plaintiffs to repay the loan. It alleged that the duty of both plaintiffs attached to the automobile and that all parties intended the automobile would serve as security for the payment of the loan. It prayed for an equitable lien in its favor to attach to the automobile and all sale proceeds thereof, and for "such other relief as this Court may deem just and proper."

The court's entry of a judgment of $8,041.28 against Maurice Jefferson on this count was plain error. This count does not state a claim for a money judgment. It alleges a claim for an equitable lien. The law governing equitable liens is set out in *Iota Management v. Boulevard Inv. Co.*, 731 S.W.2d 399, 420 (Mo.App.1987) as follows:

> An equitable lien is a remedial device that provides a method for the enforcement of an obligation. The equitable lien attaches to the property for the purpose of securing payment of the existing obligation and is ancillary to and separate from the debt. 51 Am.Jur.2d *Liens* § 22 (1970).

> The requirements to establish an equitable lien include: 1) a duty or an obligation owing by one person to another; 2) a res to which that obligation fastens, which can be identified or described with reasonable certainty; and an intent, express or implied, that the property serve as security for the payment of the debt or obligation. *Hartog v. Siegler*, 615 S.W.2d 632, 639[19] (Mo.App.1981).

> \*    \*    \*    \*    \*    \*

> Equity allows a lien to be placed on the proceeds of the sale of property on which an obligation is owed. *Miller v. Heisler*, 187 S.W.2d 485, 491 (Mo.App.1945).

Bick Corporation argues that we may uphold the money judgment under the theory that the evidence amended the pleadings and supported a money judgment against Maurice Jefferson on the theory that he benefited from the loan and thus had a duty to repay it.

■ We disagree that the evidence amended the pleadings. The evidence to which Bick Corporation points as supporting a money judgment was all evidence relevant to other issues in the case. In order for evidence admitted without objection to amend the pleadings by implied consent under Rule 55.33(b), that evidence must bear only on the new issue and not be relevant to an issue already in the case. *Wulfing v. Kansas City Southern Ind. Inc.*, 842 S.W.2d 133, 148 (Mo.App.1992). "When evidence is relevant to an issue already in the case and there is no indication that the party who introduced it was seeking to raise a new issue, pleadings are not amended by implication or consent under Rule 55.33(b)." *Id.* at 149, quoting *Shaw v. Burlington N., Inc.*, 617 S.W.2d 455, 457 (Mo.App.1981). Further Bick Corporation never sought a money judgment at trial against Maurice Jefferson. In its proposed findings relating to Count II, Bick Corporation only asked the court to order an equitable lien. The trial court plainly erred in awarding Bick Corporation a money judgment against Maurice Jefferson.

### III.

For their third point plaintiffs contend the trial court erred in failing to issue findings of fact and conclusions of law. They claim that the trial court was obligated to issue such findings upon *defendants'* attorney's request, citing Rule 73.01. They further argue, without citation of authority, that they can appeal the denial even though their counsel did not make a request.

■ At the close of defendants' case, defendants' counsel stated, "I would request the court to issue findings of fact and conclusions of law in this matter. And I have proposed findings of fact." The trial court denied the request. Plaintiffs' counsel made no request for findings and did not specify any controverted fact issue to the court.

Rule 73.01(a)(2) provides in pertinent part:

The court ... and may, or if requested by counsel, shall, include its findings on such controverted fact issues as have been specified by counsel.

Contrary to plaintiffs' point and argument, this rule does not require the trial court to generally issue findings of fact and conclusions of law. Upon counsel's timely request the trial court must only issue findings on those controverted fact issues as have been specified by counsel. *Buckman v. Buckman,* 857 S.W.2d 313, 322 (Mo.App.1993). In this case defendants' counsel made a general request for findings and did not specify in his request any controverted fact issues. Under these circumstances, plaintiffs may not appeal the trial court's failure to make findings. *Snider v. Snider,* 570 S.W.2d 770, 774–75 (Mo.App.1978); *Millard Farms Inv. v. Sprock,* 829 S.W.2d 1, 4 (Mo.App.1991). Point three is denied.

Defendants' Motion to Dismiss is denied. The money judgment in favor. of defendant Bick Corporation against plaintiff Maurice Jefferson on Count II of the Amended Counterclaim is reversed and remanded. In all other respects the judgment of the trial court is affirmed.

KAROHL and CRAHAN, JJ., concur.