**Mark PATTERSON, Appellant–Respondent,**

v.

**Rhonda PATTERSON, Respondent–Appellant.**

Nos. 26822, 26824.

Missouri Court of Appeals, Southern District, Division One.

Oct. 11, 2006.

Motion for Rehearing or Transfer to Supreme Court Denied Oct. 30, 2006.

Application for Transfer Denied Dec. 19, 2006.

Tim Gammon, Springfield, for appellant/respondent.

Susan S. Jensen, Pratt, Fossard, Jensen & Masters, L.L.C., Springfield, for respondent/appellant.

JOHN E. PARRISH, Judge.

Mark Patterson (husband) and Rhonda Patterson (wife) each appeal the judgment entered in their dissolution of marriage case. Both husband and wife appeal the parts of the judgment that awarded child custody and visitation and the distribution of marital property. Husband also appeals

the amount of child support the judgment directs that he pay. This court affirms.

Both parties sought dissolution of their marriage. The parties have one child, Tyler Allen Patterson, born May 11, 1992. The trial court dissolved the marriage, awarded sole legal and physical custody of Tyler to wife, granted husband specific periods of supervised visitation, and ordered husband to pay child support in the amount of $846 per month. Non-marital property was set aside to each respective party. Marital property and marital debts were divided.

This court's review is undertaken pursuant to Rule 84.13(d).

> The judgment will be affirmed unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Hall v. Hall,* 53 S.W.3d 214, 217 (Mo. App.2001). The evidence and all inferences drawn therefrom are viewed in the light most favorable to the judgment. *Id.* Deference is granted to the trial court's determinations regarding the credibility of witnesses. *Id.*

*Shelby v. Shelby,* 130 S.W.3d 674, 676 (Mo. App.2004).

Husband asserts five points on appeal. Wife presents two points in her cross appeal.[1] Wife's Point VI is directed to the same issue to which husband's Points II and III are directed, the award of child custody and visitation. They will be addressed together. Facts directed to the issues asserted in particular points on appeal will be set forth in the parts of this opinion that address those points.

*Husband's Point I*

■ Husband's Point I asserts four claims of error that he alleges deprived him "of his rights to due process and equal protection under the Fifth and Fourteenth Amendments to the United States Constitution." Husband argues that this occurred as a result of the trial court "limiting and restricting [his] allotted trial time while in effect allowing [wife] twice as much time for her witnesses and advocates;" "denying ... his right to discover and use all records of counselor Brown and the GAL Kim Lowry;" "failing to order a current evaluation of Tyler by an independent psychologist or obtain Tyler's direct testimony;" and "failing to recognize [husband's] liberty interest in access to and involvement with his son and to apply heightened judicial scrutiny before restricting or denying that interest."

Husband's Point I appears to suggest that the trial court erred in four ways: (1) by allocating the amount of time each litigant would have for presenting their cases; (2) by denying a discovery request for records of a counselor who would be a witness for wife and for records of the guardian ad litem; (3) by not ordering a further evaluation of Tyler or, *sua sponte,* requiring Tyler to testify at trial; and, (4) by denying husband access to his son without "apply[ing] heightened judicial scrutiny" (whatever that is).

■ Husband's Point I does not explain, in the context of the case as required by Rule 84.04(d)(C), why these actions deprived him of the constitutional rights he claims were denied. Further, the point groups multiple allegations of incidents of error that relate to a variety of issues into a single point relied on. Husband's Point

---

1. Wife has numbered her two points "Point VI" and "Point VII," apparently continuing the sequence that follows husband's Points I through V. This opinion will, therefore, identify the points by the party who raised each point followed by the number the party assigned to the point.

I contains multifarious claims. "Improper points relied on preserve nothing for appellate review." *Rushing v. City of Springfield,* 180 S.W.3d 538, 539 (Mo.App. 2006). Husband's Point I is dismissed.

*Husband's Points II and III; Wife's Point VI*

██ Husband's Points II and III assert that the trial court erred in restricting his visitation with Tyler (Point II) and that "[t]he trial court erred in denying significant and meaningful contact between Tyler and [husband]" (Point III). Wife's Point VI argues that the trial court erred in granting any visitation to husband.

The trial court awarded custody of Tyler and visitation as follows.

## A. CUSTODY.

### 1. LEGAL CUSTODY.

The [WIFE] is awarded **SOLE LEGAL CUSTODY** of the minor child, and shall therefore have the sole decision making right, responsibility, and authority relating the health, education, and welfare of the child. Further, as sole legal custodian, the [wife] shall not be required to consult with the [husband] in the exercise of her decision making rights, responsibilities, and authorities.

### 2. PHYSICAL CUSTODY.

The [WIFE] is awarded **SOLE PHYSICAL CUSTODY** of the minor child.

. . .

**CONTACT SCHEDULE.** Upon the conditions set forth below the [husband] shall have restricted, supervised parenting time with the minor child for two, six hour periods each month to be exercised from 10am [sic] to 4pm [sic] on the 2nd and 4th Saturdays of each month. The conditions for same are as follows.

(1) The [husband] shall submit the name of a proposed supervisor, who must be agreed to by the [wife] and approved by the Guardian ad Litem. In the absence of such agreement and approval, the [husband] must seek relief from the Court.

(2) The [husband] shall be responsible for the cost associated with the supervised contact, and must pay the supervisor and the Guardian ad Litem for time spent in this process for each designated parenting time no later than Monday at 5pm [sic] for the parenting time to be exercised that following Saturday. If these costs are not paid in advance on the Monday preceding the parenting time, then said parenting time shall be forfeited by [husband].

. . .

Husband's Point II, as it is perceived by this court, complains about the weight he contends the trial court gave the testimony of a counselor and the guardian ad litem in concluding there had been domestic violence in husband's relationship with wife and in restricting father's visitation with Tyler. Husband argues that counselor Leslie Brown and the guardian ad litem were biased against him. He contends their bias is evidenced by the fact that wife retained the counselor and worked with her ten months before the court appointed her; that the counselor recommended the guardian ad litem and, thereafter, the guardian ad litem recommended that the trial court appoint Ms. Brown to assist in the case. Husband complains that after he filed a complaint against the guardian ad litem, the guardian ad litem and the counselor "constructed the argument and marshaled the evidence against [husband]." Point II contends that the actions

of the counselor and the guardian ad litem "resulted in denying [him] access to and meaningful visitation with his son."

Husband's Point III contends "[t]he trial court erred in denying significant and meaningful contact between Tyler and [husband]." Husband argues that his relationship with Tyler "was functioning at the time of separation"; that problems in his relationship with Tyler "were a result of the separation and not a cause of the separation." He asserts a willingness "to go to counseling to correct any alleged vulgarity or verbal abuse toward Tyler" and complains there was a lack of "direct evidence from Tyler" or from a neutral psychologist about Tyler's wishes and about other problems that husband asserts appeared after he and wife separated. Wife's Point VI contends the trial court erred in granting any visitation to husband because the evidence and recommendations of the counselor and guardian ad litem were adverse to granting of visitation rights to father.

Section 452.400.1, RSMo 2000, as it existed at the time of the trial of this case, provided, as applicable here:

> A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his or her emotional development. The court shall enter an order specifically detailing the visitation rights of the parent without physical custody rights to the child ... for whom such parent has custodial or visitation rights. In determining the granting of visitation rights, the court shall consider evidence of domestic violence. If the court finds that domestic violence has occurred, the court may find that granting visitation to the abusive party is in the best interests of the child....

The trial court found with regard to the child's needs to have frequent, continuing, and meaningful relationships with both parents and the ability and willingness of the parents to actively perform their functions as mother and father for the needs of the child:

> In this regard the Court recognizes the public policy of this state that frequent, continuing and meaningful contact with both parents is in the best interest of child, **except for cases where the Court specifically finds that such contact is not in the best interest of the child.** In this case, the Court does find and conclude from the evidence that it is not in the child's best interest to have such contact with [father]. The Court further concludes that unrestricted contact by [husband] with Tyler would endanger Tyler's physical health and impair his emotional development. In fact, unrestricted contact by [father] during the marriage, and prior to this Court's Order for restricted contact, has already impaired Tyler's emotional development and his physical health and resulted in the necessity of extended therapy for Tyler.... [Emphasis in original.]

Wife testified that she gained weight; that husband was unhappy about her appearance. Husband would call her vulgar and demeaning names in Tyler's presence. Husband tried to get Tyler to participate in demeaning wife. He would ask Tyler questions such as, "Isn't your mom fat? Isn't your mom a fat b——?" Tyler would ignore husband or would try to get husband not to make demeaning remarks. On Christmas Day 2000, husband persisted in calling wife names in front of Tyler. Tyler told husband not to say those things about her. Husband reacted, telling Tyler, "You need to f—— ing find somewhere else to live, son, if you're going to do this.

You will respect me." After that, husband whipped Tyler.

When wife was planning to leave husband, husband told Tyler that if he left with wife, they would be living on the street; that they would be living out of their car. Husband told wife and Tyler "that you don't f—— with a Patterson." He told them they would have nothing. Wife told what occurred as she was leaving with Tyler: "And [husband would] keep grabbing Tyler back [saying], 'Son, you got your head up your mom's a——. If you leave here with her it's going to be your biggest mistake of your life.' "

Wife told of husband's bizarre behavior prior to the time she left their home. She told of his failing to sleep other than about two hours at a time; that she would wake up and find him in another room stoking a fire and talking about her when there was no one in the room. Husband expressed concerns about people coming on his property at night without him knowing. He had a night vision device. Wife explained, "And he would go out all times of the night and stay outside, laying down, watching down our driveway, as well as the perimeter to our property." He did this several times a week. She told of husband's smoking marijuana on a daily basis.

Wife took Tyler to Leslie Brown, a psychotherapist, after the separation. Tyler told Ms. Brown about negative statements husband had made about wife. Husband said wife was crazy; that wife did not want Tyler; that mother was trying to kill Tyler; and that mother had killed six children. Ms. Brown told the court that Tyler developed compulsive behaviors and tics as a result of his anxiety. He would blink repeatedly when talking about husband. He would touch a certain spot or object repeatedly or shut a door repeatedly. He washed his hands until they were raw.

Ms. Brown related Tyler's behavior to anxiety and insecurity.

The behaviors Ms. Brown described began when she urged Tyler to increase visits with husband. Tyler told her he would "consider" spending more time with husband if husband would quit talking about the divorce and saying bad things about wife.

The trial court's findings include:

The Court does find that here [sic] has been a pattern of domestic verbal and emotional abuse in this marriage inflicted by the father upon the child and inflicted upon the mother, and the parenting plan ordered herein below attempts to best protect the child who is the victim of that abuse by limiting his contact with [husband] as set forth in said plan. The court is presented with a dilemma in this case regarding the appointment of a supervisor for [husband's] court ordered parenting time. This court has concluded, for reasons articulated elsewhere in this judgment, that it is in the best interest of the child that the parenting time to be exercised by [husband] be limited to two, separate six hour periods each month to be supervised by an appropriate responsible adult. Section 452.400.2 RSMo. requires the Court to appoint such appropriate adult for the protection of the child. This Court scheduled a conference on December 27, 2004 with the counsel of record and any unrepresented party for the purpose of designating the supervisor which the Court would appoint in it's [sic] judgment. The [husband], whose prior attorney had been granted leave to withdraw after trial at the request of [husband], did not appear for said conference, nor did he retain counsel to appear for him. Thus, the [husband], by his choice, failed to present this Court with any suggestions on who to appoint

as a supervisor. The Court has, therefore, attempted to address this issue in a manner which will avoid the necessity of the parties returning to Court, and while at the same time protecting the minor child.

■■■ Child custody and related visitation are matters dependent on careful consideration of evidence, including assessment of the credibility of witnesses.

The trial court's determination in child custody matters must be given greater deference than in other cases. *Wilson v. Wilson*, 873 S.W.2d 667, 670 (Mo.App. E.D.1994). The trial court has broad discretion in determining matters involving child custody, and that decision will be affirmed unless the appellate court is firmly convinced that the welfare of the children requires a different disposition. *P.L.W. v. T.R.W.*, 890 S.W.2d 688, 690 (Mo.App. S.D.1994). We are to presume that the trial court awarded custody in the children's best interests, due to its superior position in judging the credibility of the witnesses, along with their character, sincerity, and other intangibles not completely revealed by the record. *Sisk v. Sisk*, 937 S.W.2d 727, 730 (Mo.App. S.D.1996). "The trial court is free to believe or disbelieve all, part or none of the testimony of any witness." *Id.* In reviewing an award of custody, the appellate court presumes that all evidence was considered by the trial court, and it should not substitute its judgment for that of the trial court so long as there is credible evidence upon which the trial court can formulate its beliefs. *In re Marriage of Patroske*, 888 S.W.2d 374, 383–384 (Mo.App. S.D.1994). *In re Marriage of Powell*, 948 S.W.2d 153, 156 (Mo.App.1997). There was substantial evidence adduced at trial from which the trial court could conclude that legal and physical custody of Tyler should be placed with wife; that visitation by husband should be supervised; that unsupervised visitation would endanger Tyler or impair him emotionally.

Husband complains with respect to the limitations on his contacts with Tyler that the guardian ad litem and counselor were biased; that they were prejudiced against him. Those complaints are not supported by the record. The counselor's assessments of the detrimental effect husband had on Tyler were based on husband's actions. The trial court did not abuse its discretion by granting legal and physical custody of Tyler to wife or by requiring husband's visits with Tyler to be supervised.

The guardian ad litem's principal allegiance is to the court and to advocate what he or she believes to be in the child's best interest. *Guier v. Guier*, 918 S.W.2d 940, 950 (Mo.App.1996). The record before this court demonstrates that this occurred. Husband's complaints are based on the fact that the counselor and guardian ad litem did not agree with his position, not on demonstrated prejudice by those persons. Father's Points II and III are denied.

■■ The same deference that is granted the trial court in considering husband's points on appeal is applicable to wife's Point VI in which she contends the trial court erred in awarding visitation to husband. There was evidence on which the trial court could find husband desired to better his relationship with Tyler and that there had been a positive aspect to their relationship in times past. The resolution of conflicting evidence is left to the trial court. *Miers v. Miers*, 53 S.W.3d 592, 596 (Mo.App.2001). This court will not substitute its judgment for that of the trial court so long as credible evidence exists on which the trial court could formulate its belief. *Ludwig v. Ludwig*, 126 S.W.3d

466, 474 (Mo.App.2004). Wife's Point VI is denied.

### Husband's Point IV

Husband's Point IV states:

The trial court erred, after calculating pursuant to § 452.340.1 R.S.Mo. and Form 14 the presumed amount of child support to be $516 per month from [husband] and $330 from [wife], in making an upward adjustment for counseling expenses and awarding [wife] an additional $330 per month for child support apparently based on [wife's] request for $345 per month for counseling, and by awarding [wife] an additional $20,000 in effect, in trust for the child's counseling, without giving [husband] any credit for either, and in failing to specify the basis for the upward adjustment when findings of fact were requested, and required by the statutory (452.340) and case law.

■ Husband's Point IV asserts three disparate claims of error in a single point; a claim that the trial court erred in including money for counseling in the amount of child support awarded; a claim that the trial court erred in including $20,000 in its property award to wife to be available for counseling for Tyler (claiming this was an improper award of marital property to the child); and a claim that the trial court erred in not making findings of fact for its basis for an "upward adjustment" of child support. Husband's Point IV is multifarious. It is an improper point relied on. *Rushing v. City of* Springfield, supra. It preserves nothing for appellate review. It impedes disposition on the merits of the issues attempted to be raised. The point is dismissed.

■ This court nevertheless notes the following regarding the multiple subjects to which Point IV alludes. A request was filed for the trial court "to make specific findings of fact and specific conclusions of law in regards to all issues decided by the Court." The request did not identify specific controverted fact issues on which it desired findings. As *Jefferson v. Bick,* 872 S.W.2d 115 (Mo.App.1994), explained with respect to the predecessor to present Rule 73.01(c), the rule "does not require the trial court to generally issue findings of fact and conclusions of law." *Id.* at 121. What it requires is, "[u]pon counsel's timely request the trial court must only issue findings *on those controverted fact issues as have been specified by counsel.*" (Emphasis added.) *Id.* The amount of child support to be paid was not specified as a controverted fact on which findings of fact were requested.

■ The trial court rejected the parties' Forms 14. It calculated presumed child support. It then declared that amount to be unjust and inappropriate. No further statement is required. *Hall v. Hall,* 53 S.W.3d 214, 220–21 (Mo.App. 2001). The trial court expressly stated that the "upward adjustment" it made in child support was not an adjustment to provide for counseling expenses, but that counseling expenses were considered in awarding marital property. With respect to an award of money to be available for counseling expenses as part of the division of marital property, that award was to wife, not to Tyler as husband argues.

### Husband's Point V

■ Husband's Point V states:

The trial court erred, apparently punishing [husband] for the alleged verbal abuse in awarding [wife] all of her bank stock, in other findings and divisions and in directing the balance of the real estate, which had been the Patterson homestead, be sold at auction without giving [husband] an opportunity to buy

out the mother's share, which resulted in depriving [husband] of a just division of the marital property as required by Missouri law (§ 452.330).

Point V does not comply with Rule 84.04(d) and, therefore, preserves nothing for review. *State v. Eggers*, 51 S.W.3d 927, 930 (Mo.App.2001). Rule 84.04(d)(1) requires:

Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

■ Husband's Point V appears to challenge the distribution of two items of marital property, the award of bank stock to wife and the order that certain real estate be sold at auction.[2] Arguably, the point asserts as the "legal reason" for the claim of reversible error that the division of marital property the trial court made does not comply with requirements of § 452.330. The point is void, however, of an explanation, in the context of the case, as to why the division of marital property does not satisfy requirements of the statute. As *Thummel v. King*, 570 S.W.2d 679 (Mo.banc 1978), explains:

Ordinarily, an appellate court sits as a court of review. Its function is not to hear evidence and, based thereon, to make an original determination. Instead, it provides an opportunity to examine asserted error in the trial court

which is of such a nature that the complaining party is entitled to a new trial or outright reversal or some modification of the judgment entered. It is not the function of the appellate court to serve as advocate for any party to an appeal.... When counsel fail in their duty by filing briefs which are not in conformity with the applicable rules and do not sufficiently advise the court of the contentions asserted and the merit thereof, the court is left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency. Courts should not be asked or expected to assume such a role. In addition to being inherently unfair to the other party to the appeal, it is unfair to parties in other cases awaiting disposition because it takes from them appellate time and resources which should be devoted to expeditious resolution of their appeals.

*Id.* at 686. Husband's Point V is sufficiently deficient that it impedes disposition on the merits. Husband's Point V is dismissed.

### Wife's Point VII

■ Wife's Point VII argues that the trial court erred in classifying the equity in the house and five acres the parties owned as non-marital property of husband. She contends the property was marital property in that it was acquired during the marriage or was transmuted into marital property. Wife argues the error was prej-

---

**2.** The argument portion of husband's brief that is directed to Husband's Point V tends to address other aspects of the distribution of marital property. Those arguments are of no consequence in that "[a]n appellate court reviews only issues raised in the points relied

on in an appellant's brief." *State v. Rogers*, 973 S.W.2d 495, 498 (Mo.App.1998). *See also Richter v. Kirkwood*, 111 S.W.3d 504, 507 n. 4 (Mo.App.2003); *Villines v. Mier*, 58 S.W.3d 921, 924 (Mo.App.2001).

udicial in that the $46,000 the trial court found husband had contributed toward the acquisition of the property amounted to 29% of the marital property; that she was entitled to share in that value.

■ The parties married in 1986. They purchased 73 acres of real estate in 1992. That included the 68 acres the trial court ordered sold at auction and the five acres on which the marital residence was located and which is the tract to which wife's Point VI is directed. The real estate was titled jointly, in both husband's and wife's name. There is a strong presumption of a marital gift, regardless of the source of funds used in acquiring property, when property is acquired during marriage and jointly titled. *Winter v. Winter*, 167 S.W.3d 239, 246 (Mo.App. 2005). Father failed to present evidence sufficient to overcome the presumption that there was a marital gift. The trial court erred in concluding the equity in the five-acre tract was non-marital property.

■ Regardless, error in classifying property as marital or non-marital does not require reversal unless it materially affects the merits of the action. *McCoy v. McCoy*, 159 S.W.3d 473, 477 (Mo.App. 2005). "Reversal is required only if the error caused the division of property to be so unduly weighted in one party's favor as to constitute an abuse of discretion." *Id.*

Disregarding the value of the real estate that was ordered sold at auction (the proceeds of which were ordered paid 60% to wife and 40% to husband), wife received 65% of the value of the property the trial court classified as marital property. Husband received 35%.

After reclassifying the $46,000 equity in the house and five acres, upon husband being awarded that property, husband would receive 55% of the marital property. Wife would receive 45%. Husband was assigned marital debt in the amount of $140,996 of which $74,080 was debt secured by the real estate on which the house was located. Wife was assigned debt in the amount of $62,230.

The division of property is not so unduly weighted in either party's favor as to constitute an abuse of discretion. Wife's Point VII is denied. The judgment is affirmed.

RAHMEYER, P.J., and LYNCH, J., concur.