**Orin Kim AMYX, Appellant,**

**v.**

**Pamela Sue (Amyx) COLLINS, Respondent.**

No. 19964.

Missouri Court of Appeals, Southern District, Division One.

Jan. 11, 1996.

Thomas W. Cline, Gainesville, for appellant.

Todd F. Thorn, West Plains, for respondent.

MONTGOMERY, Presiding Judge.

The marriage of Orin Kim Amyx (Father) and Pamela Amyx Collins (Mother) was dissolved on March 7, 1984. Samantha Amyx, the only child produced by this union, was born in 1982. The dissolution decree awarded Mother custody of Samantha and ordered Father to pay $300 monthly child support.

The decree was modified on January 2, 1990, based on the parties' stipulation, whereby Father's child support obligation was reduced to $150 monthly from March 1989 until January 5, 1990. The order also incorporated the following provision:

That as of January 5, [1990],[1] [Father] will pay the sum of Three Hundred Dollars ($300.00) per month as and for child support and that to insure regular payments of these sums on the fifth day of each month [Father] will purchase an annuity in sufficient amount to pay $300.00 per month as and for child support until Samantha's eighteenth birthday. [Father] will remain the owner of the annuity, but will provide [Mother] with a copy of the same, and will have the annuity written such that in the case of his death the owner of said annuity will be Samantha. [Father] will not borrow against or encumber said asset.

On November 24, 1993, Father filed a motion to modify his child support along with a petition for declaratory judgment. The motion to modify alleged, in pertinent part, that Father had lost his most recent job and was unable to find gainful employment. He prayed for a reduction in child support. Father's petition for declaratory judgment alleged that a controversy existed concerning the amount of child support owed under the January 2, 1990, court order. Paragraph 5 of his petition alleged:

That the terms of the order are vague and ambiguous in that [Father] is unable to tell whether he is to spend $300.00 per month, or to expend a sufficient amount that would purchase an annuity that will equal a value of $300.00 per month at the expiration of a time in the future when the minor child will attain the age of eighteen years.

Father prayed for a declaration of the rights and responsibilities of the parties and for a determination of the proper child support amount due under the January 2, 1990, order.

On November 14, 1994, the trial court denied Father's motion to modify, finding that Father (1) voluntarily terminated his employment at the Cloud Nine Ranch and was subsequently denied unemployment benefits, (2) inherited $35,451.73 in July 1992 but continued to make only partial child support

---

1. The year 1989 appears here in the parties' stipulation which was incorporated into the trial court's order. Both parties acknowledge this was a typographical error. Because no issue is made of this date, we accept the date as 1990.

payments and discontinued payments completely in October 1993, and (3) was not credible as to his assertions that he is unemployable for medical reasons. The court imputed income to Father of $860 monthly based on his past and present earning capacity.

The court further declared that the January 2, 1990, order obligated Father to pay $300 monthly child support and, to insure regular child support payments, Father was required to purchase an annuity in a sufficient amount to pay $300 monthly until Samantha's eighteenth birthday. The judgment contained the following additional provision:

> Pursuant to the Stipulation for Modification of Divorce Decree, filed December 19, 1989 [incorporated in the January 2, 1990 order], [Father] still has the obligation to purchase an annuity in sufficient amount to pay $300 per month child support until the child's eighteenth birthday. [Father] is hereby ordered to comply in full with this prior order and to provide proof of purchase of the annuity to the Court within thirty days.

Father appeals from this judgment, presenting two points relied on. The first point claims the trial court erred in declaring that Father was required to pay $300 monthly child support and that Father was also required "to purchase an annuity that would be worth $300.00 per month at [Samantha's] eighteenth birthday." Father asserts the trial court's ruling was unreasonable and against the weight of the evidence because this construction of the January 2, 1990, order required him to expend $488 monthly ($300 for child support and $188 for annuity purchase).

Obviously, Father misconceives the trial court's ruling. He was not ordered to pay $300 monthly child support *and* purchase an annuity "that would be worth $300 per month at Samantha's eighteenth birthday." There-

fore, the instant judgment is not erroneous for the reason Father asserts.

■ However, we observe a glaring problem with the 1990 order and the judgment before us. Beginning with *Niederkorn v. Niederkorn*, 616 S.W.2d 529 (Mo.App.1981), Missouri courts have consistently held invalid an order requiring a parent obligated to pay child support to maintain life insurance with his or her child as a beneficiary. Such a requirement amounts to an order for posthumous child support because liability for future child support terminates upon the obligor parent's death. *Id.* at 538. Stated more succinctly, "[a]n order to secure child support through life insurance is void because a parent is not required to support his children after his death." *Zalmanoff v. Zalmanoff*, 862 S.W.2d 941, 947 (Mo.App.1993). Other cases adhering to this rule are *Handshear v. Handshear*, 775 S.W.2d 544, 545 (Mo.App.1989); *Steffens v. Steffens*, 773 S.W.2d 875, 877 (Mo.App.1989); *Newport v. Newport*, 759 S.W.2d 630, 638 (Mo.App.1988); *Wynn v. Wynn*, 738 S.W.2d 915, 920 (Mo. App.1987); and *Metropolitan Life Ins. Co. v. Alcorn*, 674 S.W.2d 115, 116 (Mo.App.1984).

■ The instant order requires Father to purchase an annuity which will pay child support up to his child's eighteenth birthday regardless of the possibility Father will not live that long. Conceivably, as in life insurance cases, this order would have the effect of requiring Father to pay child support after his death when he has no such obligation.

While an annuity is different from a life insurance policy,[2] the difference is insignificant under the terms of the instant order which clearly requires Father to provide child support until his child's eighteenth birthday through the purchase of an annuity. The end result is the same whether child support is ordered secured through the purchase of life insurance or an annuity, i.e., the obligor parent is faced with an order possibly requiring posthumous payment of child sup-

---

2. "An annuity is a right—bequeathed, donated, or purchased—to receive fixed or certain periodical payments, either for life or a stated period of time." 4 Am.Jur.2d *Annuities* § 1 (1995). "An annuity contract is not a policy of life insurance. The risk assumed in an annuity contract is to pay to the annuitant an annuity so long as he lives, while the risk assumed in a life insurance contract is to pay upon insured's death." *Rosenbloom v. New York Life Ins. Co.*, 65 F.Supp. 692, 695 (W.D.Mo 1946) (citations omitted).

port. Although we find no Missouri cases addressing an annuity ordered to secure child support, we believe the life insurance cases indicate that the 1990 order and the instant judgment are tantamount to an order for "posthumous child support." The above cases condemn such an order.

Father's point does not attack the 1990 order for requiring posthumous payment of child support. He claims the trial court, in the 1993 "declaratory judgment" proceeding (from which this appeal arises), erred only in its interpretation of the 1990 order. Clearly, Father does not challenge the validity of the 1990 order requiring the purchase of an annuity, but only argues the trial court, in the judgment appealed from, misconstrues that provision.

Mother, in her response, maintains the trial court correctly interpreted the 1990 order. In Mother's words, the provision regarding the annuity "means what it says."

■ The questions for decision on appeal are those stated in the points relied on. *Pruellage v. De Seaton Corp.*, 380 S.W.2d 403, 405 (Mo.1964). An appellate court must, and does, confine its review to the points relied on. *Humphrey v. Sisk*, 890 S.W.2d 18, 21 (Mo.App.1994).

By not challenging the validity of the 1990 order, Father gave this Court the awkward choice of ignoring that glaring problem or addressing it *sua sponte.* Faced with that unpleasant option, we can only deny Father's point out of fairness to Mother.

If Father, with the benefit of the above cases, desires to return to the trial court and challenge the validity of the 1990 order, he is free to do so. Alternatively, he may choose to oppose any effort by Mother to enforce the annuity provision. Mother will then have a chance to argue against the application of *Niederkorn* and its progeny. Appellate review would, of course, be available once the trial court decides the issue.[3]

Father's last point complains the trial court erroneously denied his motion to modify by imputing $860 to him "in that there was

no evidence to support the Court's finding and the Court's Order was against the weight of the evidence."

■ Our review is governed by Rule 73.01(c) as construed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32.

■ When determining the sufficiency of the evidence, we accept as true the evidence and inferences from the evidence that are favorable to the trial court's decree and disregard contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is against the weight of evidence with caution and with a firm belief that the decree or judgment is wrong. *Murphy*, 536 S.W.2d at 32.

■ We give due regard to the trial court's opportunity to judge the credibility of witnesses. Rule 73.01(c)(2); *T.B.G.*, 772 S.W.2d at 654. The trial judge may believe none, part, or all of the testimony of any witness. *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988). We defer to the trial court on factual issues because it is in a better position to not only judge the credibility of witnesses directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record. *In re Adoption of W.B.L.*, 681 S.W.2d 452, 455 (Mo. banc 1984).

■ In determining a parent's ability to pay child support, the trial court may consider a parent's past, present, and anticipated earning capacity. *In re Marriage of Manning*, 871 S.W.2d 108, 110 (Mo.App.1994). A parent may not escape responsibility by voluntarily declining to work, by deliberately limiting work to reduce income, or by otherwise disabling himself financially. *In re*

---

3. Nothing we say concerning the annuity provision should be construed as affecting Father's obligation to pay $300 per month child support

under the 1990 order or the child support order in question.

*Marriage of Garrison,* 846 S.W.2d 771, 775 (Mo.App.1993).

Rule 88.01(e) states that "[t]here is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the amount of child support to be awarded . . . ." The directions for completion of Form No. 14 provide that child support may be calculated for an unemployed parent based on a determination of potential income. "To determine potential income, the court . . . may consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, prevailing job opportunities in the community . . . ."

■ Here, at the time of trial, Father was 42 years old and had almost two years of college education. As late as June 1994, Father was earning $860 monthly at the Cloud Nine Ranch. The trial court specifically found that Father terminated this employment voluntarily. The court also found that Father inherited over $35,000 in July 1992, but Father still failed to pay the full amount of child support thereafter. These findings have evidentiary support.

Although Father testified his poor health prevented him from being employed, the trial court, as it was free to do, disbelieved him. Father's testimony was not supported by any medical testimony.

■ In essence, Father's argument is based on the premise that the trial court should have believed his evidence that he was unemployable. We must assume that the trial court believed the testimony consistent with its judgment. *In re Marriage of Dempster,* 809 S.W.2d 450, 456 (Mo.App.1991).

Based on the evidence before us, we have no firm belief that imputing income to Father and denying his motion is wrong. Point II lacks merit.

The judgment is affirmed.

CROW and BARNEY, JJ., concur.