In re the MARRIAGE OF Keith
T. COLLEY and Beverly A.
Colley.

Keith T. Colley, Petitioner–Respondent,

v.

Beverly A. Colley, Respondent–Appellant.

No. 21987.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 30, 1998.

Application for Transfer Denied
Dec. 22, 1998.

Application for Transfer Denied
Feb. 23, 1999.

Kenneth C. McManaman, Cape Girardeau, for Appellant.

Manuel Drumm, Sikeston, for Respondent.

Before GARRISON, C.J.,
MONTGOMERY, J., and BARNEY, J.

PER CURIAM.

Beverly A. Colley ("Wife") appeals from a judgment entered in the dissolution of marriage action filed by Keith T. Colley ("Husband"). The judgment ended the eighteen plus year marriage that produced two children, ages eleven and eight. On this appeal, Wife presents eight points of alleged trial court error. We reverse and remand in part, and affirm in part.

■ The statement of facts in Wife's brief is fifteen pages long and consists entire-

ly of a summary of each witness's testimony, whether related to the issues attempted to be presented on appeal or not. The transcript references reveal that the summary progresses by sequential page numbers in the transcript, and no attempt is made to collect evidence concerning any particular issue. Rule 84.04(c)[1] requires that:

> The statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument. Such statement of facts may be followed by a resume of the testimony of each witness relevant to the points presented.

A statement of facts that consists only of a summary of the entire trial testimony does not comply with this rule and would warrant a dismissal of the appeal. *Moore v. Rollmo Corp.*, 575 S.W.2d 859, 861 (Mo.App. S.D. 1978); *Graff v. Montileone*, 523 S.W.2d 131 (Mo.App.St.L.1975). We continue with the desire to decide cases on the merits where possible, however, rather than dismissing appeals because of Rule 84.04 violations, and will attempt to do so here.

The scope of our review in a dissolution case is established by Rule 73.01(c), as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32. The appellate court defers to the trial court's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the decree, and disregarding all contrary evidence and inferences. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991). This is because credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of the testimony of any witness. *In re Marriage of Perkel*, 963 S.W.2d 445, 447 (Mo. App. S.D.1998).

■ Wife's first point relied on is:

---

1. All rule references are to Missouri Rules of Civil Procedure (1998) and all statutory references are to RSMo 1994, unless otherwise indicated.

The Circuit Court erred and abused its discretion in the judgment, findings of fact and conclusions in that the court found that there was no marital misconduct on the part of either party, including Husband, as it relates to the issues of maintenance and division of marital property.

First, we are compelled to note that this point relied on fails to comply with the requirements of Rule 84.04(d), which specifies that a point relied on "shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...." The three components of a point relied on are: a concise statement of the challenged ruling; the rule of law the trial court should have applied; and the evidentiary basis upon which the asserted rule is applicable. *Jones v. Wolff,* 887 S.W.2d 806, 808 (Mo.App. E.D. 1994). Points which do not state what ruling of the trial court is challenged nor provide a proper evidentiary basis, but instead set out abstract statements of law, preserve nothing for appeal. *Id.* "Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this Rule." Rule 84.04(d). We are, however, permitted, in our discretion, to review for plain errors affecting substantial rights that result in manifest injustice or a miscarriage of justice. Rule 84.13(c). We will do so here.

■ From a review of the 1½ page argument under this point, it appears that Wife is contending that the trial court erred in concluding that there was no marital misconduct on the part of Husband. While Wife sets out several instances of conduct which she contends should have dictated a finding of marital misconduct, with one exception, it is all derived from her testimony. On appeal of a court-tried case, the appellate court defers to the trial court on factual issues because the trial court is in a better position to judge the credibility of witnesses and the persons directly, including their sincerity, character, and other trial intangibles which may not be completely revealed by the record. *In re Adoption of W.B.L.,* 681 S.W.2d 452, 455 (Mo.1984). As noted earlier, the trial court is free to believe none, part, or all of the testimony of any witness. *In re Marriage of*

*Perkel,* 963 S.W.2d at 447. An appellate court assumes that the trial court believed the testimony consistent with its judgment. *Matthews v. Moore,* 911 S.W.2d 664, 668 (Mo.App. S.D.1995).

We also note that Wife cites two cases in support of her first point, both of which contain language to the effect that the appellate court may rule to the contrary if the finding of the trial court is overwhelmingly against the weight of the evidence. *Trotter v. Carter,* 353 Mo. 708, 183 S.W.2d 898, 902 (Mo.1944); *Tharp v. Oberhellmann,* 527 S.W.2d 376, 379 (Mo.App.St.L.1975). We do not disagree with that general principle, but the theme of Wife's point seems to be that the trial court was required to believe her testimony. As indicated above, this premise is unsound. No plain error appearing, Wife's first point is denied.

■ In Wife's second point, she attacks the award of child support as being contrary to § 452.340, Rule 88.01, and Form 14. Wife and Husband each filed completed Form 14's with the trial court. Wife's arrived at a presumed amount of child support of $1,245.11 based on a monthly income of $855.48 for her and $6,666.66 for Husband. The amount of presumed child support shown by Husband's Form 14 was $799, based on a monthly income of $1,000 for Wife and $4,333 for Husband. The trial court, however, apparently did not accept either of those Form 14's because it awarded Wife child support in the amount of $902 per month consisting of $456 per child. In doing so, the trial court said in its judgment that the amount of child support awarded was "[p]ursuant to RSMo. Section 452.340, Supreme Court Rule 88.01 and the presumed Form 14, a copy of which is attached hereto as Exhibit "A" and incorporated herein by reference...." No Form 14 is attached to the copy of the judgment filed with this Court, however. Wife argues in her brief that, in fact, no Form 14 was attached to the judgment, and Husband does not refute that statement.

Based upon the evidence and after considering all factors, including the ability to earn, the trial court found that Husband's approxi-

mate income was $60,000 per year and Wife's was $12,000. By applying only these amounts to a Form 14, however, we find that the amount of Husband's presumed child support obligation would be $923.34, rather than the $902 awarded by the court. We are, therefore, left to speculate about how the trial court arrived at the amount of the child support awarded.

There is a rebuttable presumption that the amount of child support calculated pursuant to Form 14 is the amount of child support to be awarded. Rule 88.01. That presumption may be rebutted if the trial court enters a finding that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate. *Id.*

In *Woolridge v. Woolridge,* 915 S.W.2d 372 (Mo.App. W.D.1996) the court explained the difference between *rejecting* a Form 14 filed by a party, and *rebutting* the presumed child support amount calculated pursuant to Form 14. *Rejection* occurs when the trial court finds: (1) an item is incorrectly included in the calculation, (2) an amount of an item included in the calculation is incorrect, or (3) the mathematical calculation itself is incorrect. *Id.* at 378. *Rebuttal* of the presumed child support amount calculated pursuant to Form 14 occurs when the court determines that the amount so calculated is unjust or inappropriate after consideration of all relevant factors. *Id.* at 378–79.

In the instant case, the child support awarded by the trial court was different than that calculated in either party's Form 14. The only inference we can draw is that the court rejected those Form 14 calculations. The trial court is required, however, to determine and find for the record the correct Form 14 amount in every case. *Woolridge,* 915 S.W.2d at 380. Where it *rejects* the Form 14 calculations of the parties, the trial court must make its own calculation of the presumed child support amount under Rule 88.01 and Form 14 by preparing its own Form 14, or articulating on the record how it calculated its Form 14 amount. *Id.* at 381–

82.[2] Here, the trial court apparently prepared its own Form 14 in arriving at the amount of child support awarded. Those calculations are not before us, however, and we can only speculate about the amounts found to be correct and utilized by the trial court. Likewise, we cannot determine from the record whether the trial court deviated from the presumed child support amount as determined by its Form 14 calculations. If that occurred, it was necessary that there be a finding that the amount so calculated was unjust or inappropriate. *In re Marriage of Douglas,* 870 S.W.2d 466, 470–71 (Mo.App. S.D.1994). No such order was entered.

*Woolridge* also indicates that the lack of specific findings as to how the trial court calculated its Form 14 amount will not automatically require a reversal on appeal, provided that the record clearly indicates how the trial court arrived at its Form 14 amount. 915 S.W.2d at 382. The record here, however, does not provide that information. Accordingly, meaningful appellate review is not possible. Based on the record presented, we cannot determine whether the trial court arrived at the presumptively correct child support amount by making appropriate Form 14 calculations, or whether it deviated from that amount in awarding child support. The child support award must be reversed and the cause remanded for further proceedings in compliance with *Woolridge.*

Wife's third point is:

The Circuit Court erred and abused its discretion in not granting Wife's motion to set aside judgment pursuant to Supreme Court Rule 74.06 because the decree was void and irregular in that it sets [sic] forth that the marital residence should be sold to pay certain tax obligations "caused by the fraudulent acts of the Husband", [sic] but there was no provision for payment of the house payment.

The issue for determination on appeal is that framed by the point relied on. *Amyx v. Collins,* 914 S.W.2d 370, 373 (Mo. App. S.D.1996). Here, Wife complains of the

---

**2.** *Woolridge* was cited with approval by the Missouri Supreme Court in *Neal v. Neal,* 941 S.W.2d 501, 504 (Mo. banc 1997).

trial court's failure to grant her motion to set aside the judgment. She cites no authority in support of the premise that the appeal may be from the denial of that motion as opposed to the judgment itself. The essence of her point, however, is that the judgment was void and irregular because there was no provision for paying the mortgage payments on the family home pending its sale.

The trial court's judgment provided that "[t]he residence located at 607 Lindenwood and 209 W. Gladys shall be sold by agreement of the parties or at public auction, if the parties cannot agree." It also provided that certain debts were to be satisfied from the sale proceeds and that the remainder was to be divided with 60% going to Wife and 40% to Husband. Regardless of the propriety of this method of disposing of the property,[3] Wife only complains that there was no provision for satisfaction of the house payments prior to sale of the marital residence. According to the record before us, that is the property located at 607 Lindenwood.

■ Wife cites *Colabianchi*, 646 S.W.2d at 65, for the proposition that a trial court should make provisions in its decree for the satisfaction of mortgage payments on property that is to remain in common ownership until its sale. *Colabianchi* does not establish that rule. Rather, the court there merely approved a trial court judgment apportioning the mortgage payments on the marital home prior to sale. We agree with Wife, however, on the basic premise of her point. Since the parties will be sharing in the sale proceeds of the property, it is only fair that they also share in the satisfaction of the mortgage payments made prior to that time. Because the case must be remanded to the trial court concerning the issue of child support, we also remand for the entry of an amended decree establishing the relative responsibilities of the parties to satisfy the mortgage payments

on the property at 607 Lindenwood prior to sale.

■ Wife's fourth point is:
The Circuit Court erred and abused its discretion by awarding to Husband the dependency exemption for the minor children.

It is readily apparent that this point relied on wholly fails to satisfy the "wherein and why" requirements of Rule 84.04(d). *See Thummel v. King*, 570 S.W.2d 679, 684–86 (Mo. banc 1978). Additionally, the argument section of Wife's brief following this point, aside from citing two Missouri cases and a treatise,[4] consists entirely of one sentence in which she contends that the trial court should have considered awarding the exemptions to her because the child support "was presumptively below the Form 14," it should have considered splitting the income tax deduction as she requested, and it failed to require that Husband "execute a written declaration pursuant to the Internal Revenue Code." The only citation to the record on appeal, other than to the judgment itself, is the transcript where Wife testified that she had not consented to Husband claiming both children on his 1996 tax return, and that she was willing to "split the children for tax purposes." We are left to speculate about where in the record it is demonstrated that the child support was "presumptively below the Form 14," and where it is demonstrated in the record that the trial court did not *consider* splitting the income tax deduction. Rule 84.04(h) requires that all statements of fact and argument "shall have specific page references to the legal file or the transcript."

Ordinarily, these circumstances would require the conclusion that this point is not preserved for appellate review. Although Husband correctly makes that point, he acknowledges that *Vohsen* requires that we remand the case. In *Vohsen*, the court held

3. *See Colabianchi v. Colabianchi*, 646 S.W.2d 61, 65 (Mo. banc 1983); *Whaley v. Whaley*, 805 S.W.2d 681, 682 (Mo.App. E.D.1990); *Corder v. Corder*, 546 S.W.2d 798, 805 (Mo.App. W.D. 1977).

4. She cites *Niederkorn v. Niederkorn*, 616 S.W.2d 529 (Mo.App.St.L.1981), for its discussion of the rules under the Internal Revenue Code relating

to awarding the exemption to a non-custodial parent, and "Divorce Taxation" for the proposition that "there are special rules entitling the custodial parent to the dependency exemption unless he/she releases the exemption to the non-custodial parent." She also cites *Vohsen v. Vohsen*, 801 S.W.2d 789 (Mo.App. E.D.1991), discussed *infra*.

that pursuant to 26 U.S.C.A. § 152(e)(2), the trial court, in ordering that the noncustodial parent have the income tax exemption for children, must order the custodial parent to annually sign a written declaration, as prescribed in the regulations, to be attached to the noncustodial parent's income tax return. *Id.* at 792. The *Vohsen* court also held that the order to execute the declaration should be contingent upon receipt of the court ordered child support payments, and a deadline should be set for the annual execution of the declaration. *Id.* Wife acknowledges *Vohsen* in her brief and the fact that the court was required to order her to sign such a declaration.

On remand, the trial court is directed to enter an amended judgment, consistent with *Vohsen* and 26 U.S.C.A. § 152(e)(2), ordering Wife to annually execute a declaration that she will not claim the children as dependents on her income tax returns, making execution of the declaration contingent upon Wife's receipt of the court ordered child support payments, and setting a deadline for the annual execution of the form. Otherwise, Wife's fourth point is denied.

■ Wife's fifth point on appeal reads:
The Circuit Court erred and abused its discretion in that it improperly awarded excessive visitation to the father contrary to the best interest [sic] of the minor children considering evidence of fitness, domestic violence and misconduct.

The trial court awarded Husband reasonable visitation including the following specific times: 1st, 3rd and 5th weekends from 4 P.M. Friday to 6 P.M. Sunday; from 4 P.M. on Wednesday nights until school on Thursday; alternating holidays and childrens' birthdays; Husband's birthday; Father's day; and three non-consecutive two week periods during the summer. Wife argues that the trial court should have awarded Husband visitation on alternate weekends and holidays as well as "two to three weeks in the summer with the caveat that no person of the opposite sex be in the home of Husband nor that he consume alcohol."

In support, Wife argues that there was evidence of sexual infidelity and domestic violence by Husband during the marriage. She points to her testimony that Husband ripped her shirt on one occasion after she slapped him, and that he choked her during another physical altercation between them. Although she does not cite us to evidence of Husband's sexual infidelity in the argument section of her brief in support of this point, our review of the record reveals Wife's testimony that she observed Husband with another woman with whom he later admitted having an affair. If believed, this testimony could have supported the conclusion that Husband had engaged in an extramarital affair, and had been guilty of domestic violence. The trial court found, however, that there was no marital misconduct by either party. As indicated earlier, the trial court is free to believe none, part, or all of the testimony of any witness. *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988).

Wife cites *"Thorn v. Erwin*, 678 S.W.2d 861 (Mo.App., [sic] 1984)," for the proposition that if the court can find a likelihood of physical abuse, visitation will be restricted. We assume that Wife actually refers to *Irwin v. Irwin*, 678 S.W.2d 861 (Mo.App. W.D. 1984), as *"Thorn v. Erwin"* is not found at the citation given by Wife. *Irwin*, however, is totally distinguishable from the instant case. There, the evidence, which the trial court obviously believed, was that the father had assaulted the mother on numerous occasions in the presence of the children, and he had actually assaulted at least one of the children. We are directed to no such evidence here.

Even if Husband had ripped Wife's shirt and attempted to choke her as she testified, we are directed to no evidence indicating that these events occurred in the presence of the children or that they were endangered by them. Likewise, even if the trial court had believed Wife's testimony about Husband's alleged marital infidelity, she did not provide any evidence that it occurred in the presence of the children, or otherwise affected them. Extramarital sexual conduct, although not condoned by our courts, has been held not to brand a parent as unfit if not accompanied by evidence that the conduct has had or may be expected to have an adverse effect on the

children. *In re Marriage of Newberry,* 745 S.W.2d 796, 797 (Mo.App. S.D.1988).

The trial court has broad discretion in ruling on a parent's visitation privileges. *Siegenthaler v. Siegenthaler,* 761 S.W.2d 262, 266 (Mo.App. E.D.1988). The criterion for determining visitation rights is the best interests of the children. *Quackenbush v. Hoyt,* 940 S.W.2d 938, 944 (Mo.App. S.D.1997). The trial court is presumed to have studied all the evidence and decided the issue in a manner consistent with the best interests of the children. *Id.* We cannot conclude that the best interests of the children were not served or that the trial court abused its discretion in setting Husband's visitation schedule in this case. This point is denied.

Wife's sixth point is:

The Circuit Court erred and abused its discretion because it failed:

A. To make findings of fact and conclusions of law concerning the issue of maintenance;

B. To properly determine the duration of the maintenance; and

C. To properly determine the amount of maintenance to be paid.

This point at least violates the "wherein" requirement of Rule 84.04(d). Once again, in an effort to review the merits, we will make a plain error review.

The trial court's Judgment, Findings Of Fact And Conclusions Of Law included the following:

The Court finds that [Wife] has four years of college education has [sic] worked as a hair dresser both full time and part time in Sikeston, Missouri. The Court further finds that [Wife] is entitled to maintenance to give her sufficient time to complete her college education or to build her business as a hair dresser and that three years maintenance is sufficient when taking into consideration the length of time from the date of separation of the parties from April 8, 1996 to the date of this Decree.

. . . .

Pursuant to RSMo. Section 452.335, the Court having determined all factors, Or-

ders [Husband] to pay [Wife] the sum of $300 per month as non-modifiable maintenance beginning September 1, 1997 and the first day of each month thereafter, for a period of thirty-six (36) months. . . . Maintenance shall terminate thereafter.

Wife complains that the trial court did not make findings of fact and conclusions of law concerning the issue of maintenance. The above findings dispel that blanket assertion. Additionally, if Wife had desired specific findings on particular issues, she could have requested them. Rule 73.01(a)(3) provides, in pertinent part:

. . . If a party so requests, the court shall dictate to the court reporter or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of deciding any damages awarded. The court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party. Any request for an opinion or findings of fact shall be made on the record before the introduction of evidence at trial or at such later time as the court may allow. All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.

Here, Wife's attorney told the trial court prior to the introduction of evidence, "Judge, in addition all issues that are disputed in our pleadings, we request findings of facts and conclusions of law." If a party desires findings of fact and conclusions of law, it is that party's duty to identify the issues to be included. *Hammons v. Ehney,* 924 S.W.2d 843, 849 (Mo. banc 1996). The trial court must issue findings only on those controverted fact issues which have been specified by counsel. *Jefferson v. Bick,* 872 S.W.2d 115, 121 (Mo.App. E.D.1994). No appeal lies from the trial court's failure to make findings where counsel makes a general request for findings without specifying the controverted fact issues to be included. *Id.*

Section 452.335.2 requires that the trial court, in setting the amount and duration of maintenance, consider all relevant factors, including those specifically enumerated therein. The factors set out in the statute

are neither all inclusive nor mandatory, so the trial court is not required to specifically address each of them. *Monsees v. Monsees*, 908 S.W.2d 812, 818 (Mo.App. W.D.1995). Here, the court specifically addressed the time necessary for Wife to acquire sufficient education or training to enable her to find appropriate employment. Additionally, as set out in Rule 73.01(a)(3), all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached. We are unable to conclude that the trial court erred in not making more detailed findings of fact and conclusions of law concerning the issue of maintenance.

 Wife also complains that the amount of the maintenance awarded to her was not adequate to meet her reasonable needs. She points to the disparate earning capacity of herself and Husband, as well as the standard of living which they had enjoyed, and concludes that the maintenance award should have been approximately $3,000 per month rather than $300.

Trial of this case occurred in July 1997. Wife testified that her net income from her hair business in *1995* was three to four thousand dollars; that she did not believe she could support herself based on the income she had been making "the last few years"; and that she didn't know how much she was asking for maintenance, but "probably three thousand or more." She identified a statement of income and expenses which was introduced in evidence and which indicated that her monthly income was a net of $855.48. This apparently resulted from a gross income of $250 per week paid to Wife as a salary from the business operated by Husband. There was no indication of how much money Wife was then making in her hair business. The statement also listed Wife's monthly expenses at $3,360, exclusive of those particularly attributable to the children. She did not offer any testimony in explanation of any of the expenses including $190 for telephone, $462.68 for an auto loan, $160 for laundry and cleaning, and $125 for prescription drugs. Also included was $931 per month as mortgage payments on the home, which the court ordered to be sold and the proceeds divided.

The argument section of Wife's brief relating to the amount of maintenance is devoid of citations to the record in support of any statements of fact. In fact, her argument appears to be based exclusively on the credibility of the information contained in her income and expense statement, about which she offered no explanation, and the standard of living she says was enjoyed during the marriage. Obviously, these factors are included in those to be considered by the trial court pursuant to § 452.335.2. Other factors for consideration, however, include the marital property apportioned to that party. Here, the marital property apportioned to Wife included mutual funds with a net value of over $10,000.

 Awards of maintenance are matters resting within the broad discretion of the trial court, and we review such awards only for an abuse of that discretion. *Buerge v. Buerge*, 935 S.W.2d 390, 391 (Mo.App. S.D. 1996). As indicated earlier, the trial court is not required to believe the testimony of any witness, including Wife. Even if Wife's reasonable and actual monthly expenses exceeded the maintenance awarded to her, this does not necessarily translate into a finding of abuse of discretion by the trial court. *See Chambers v. Chambers*, 910 S.W.2d 780, 784 (Mo.App. E.D.1995). Section 452.335 does not require that every need of the recipient spouse be met. *Id.* Acknowledging the discretion vested in the trial court in such a matter, we are unable to conclude that it abused that discretion in setting the amount of maintenance in this case.

 Wife also contends that the trial court erred in ordering that the maintenance award terminate at the end of three years. She cites *Eckstein v. Eckstein*, 748 S.W.2d 945 (Mo.App. E.D.1988), for the proposition that a maintenance award should be of unlimited duration in the absence of evidence that the spouse will be able to meet her own reasonable needs by the conclusion of the set period. In *Eckstein*, however, the court noted that whether the trial court should limit the term of maintenance hinges on whether

there was substantial evidence to justify imposition of the limitation. *Id.* at 947–48.

In this case, Wife at least implies that there was no evidence that she could meet her own reasonable needs within three years. She testified, however, that it would possibly take her twelve to eighteen months to complete her college education. She also testified that she had been working part-time as a beautician, and that it would take three to four years for her to build her clientele to the point that she would be self-supporting. Under these circumstances, we cannot say that the trial court abused its discretion in limiting the maintenance award to three years. No plain error having been found, Wife's sixth point is denied.

 Wife's seventh point on appeal is:
The Circuit Court erred and abused its discretion in the valuation and award of marital property.

By applying the standards for a point relied on, reviewed earlier in this opinion, it is readily apparent that this point utterly and completely fails to comply with Rule 84.04(d). As such, it preserves nothing for appellate review. *Ross v. Ross,* 888 S.W.2d 734, 736 (Mo.App. S.D.1994). Nevertheless, we will also review this point for plain error pursuant to Rule 84.13(c).

 Much of Wife's argument is based on the apparent assumption that the trial court was required to believe her evidence. As indicated earlier in the opinion, that is not correct. She also cites § 452.330.1(1),(5) for the proposition that the trial court should consider the desirability of awarding the family home to the spouse having custody of the children. She, however, is unable to demonstrate that the trial court here did not *consider* that possibility. Contrary to Wife's apparent premise, the statute does not require that the family home be awarded to that parent. *Reed v. Reed,* 775 S.W.2d 326, 329 (Mo.App. W.D.1989).

Wife also makes the statement, in her argument, that "[t]here was no evidence from either party that the furniture and furnishings awarded to the Wife was worth $15,000." This relates to the fact that the trial court awarded Wife the "furniture, clothing and personal effects" valued at $15,000. Wife argues that if we deduct $15,000 from the value of the items awarded to her, the marital property she received would have had a value of more than $5,000 less than that awarded to Husband.[5] This argument is particularly disturbing considering the fact that Husband specifically identified his Exhibit 8, consisting of his proposed division of marital property, which listed the household goods at $15,000. This exhibit was introduced in evidence without objection. Obviously, contrary to Wife's direct assertion to this Court, there was evidence to support the valuation placed on this property by the trial court in making its division of marital property.

Having fully reviewed the record relating to Wife's seventh point, we find no plain error requiring relief. That point is denied.

Wife's eighth and final point is:
The Circuit Court overwhelmingly erred and abused its discretion in ordering the sale of the marital residence and other property to pay tax liabilities caused by "fraudulent tax returns prepared with information from Husband," without the knowledge of Wife.

This point also fails to comply with the *wherein* and *why* requirements of Rule 84.04(d) discussed earlier. Nevertheless, we will once again review the point for plain error.

 We note that Wife's argument is based primarily on the assertion that the trial court erred in not reopening the evidence to allow additional evidence on the parties' income tax liability caused by "fraudulent" returns prepared from information furnished by Husband. The point relied on, however, relates to that portion of the judgment which ordered the marital residence sold, not whether the trial court erred in not reopening the evidence. The issues on appeal are limited to those properly raised in

---

5. Wife also contends that the trial court, in apportioning marital property, erroneously charged her with $3,000 which she withdrew from a joint business account in both Husband and Wife's names.

the points relied on. *Amyx v. Collins*, 914 S.W.2d at 373.

Here, Wife points out that the trial court's judgment included the following:

> The Court finds that the 1993, 1994, and 1995 income tax returns may not reflect all of the income earned by the parties in their respective businesses and an amended tax return may have to be filed which may require the parties to pay additional income taxes. The court further finds that in the event additional taxes are owed, both parties should share equally in the obligation of the taxes because both parties benefited equally when fewer taxes were paid than should have been required pursuant to the Internal Revenue Service regulations as a result of an increase in the number of assets and improved living style.

Her sole argument relating to the sale of the marital residence ( the issue apparently attempted to be raised in this point) is as follows: "[t]his is an asinine finding considering Husband's tax fraud may cause serious civil and criminal repercussions to the parties, including the loss of the home to the innocent spouse and children." The choice of words by Wife's attorney is unfortunate and ill-advised. Additionally, however, no authority is cited in support of this portion of the argument. Based on the issue as submitted in this point, and the argument in support of it, we are unable to conclude that the trial court's judgment in this regard requires a reversal. Certainly, we find no plain error. The eighth point is denied.

We do not overlook the issue raised in Husband's brief concerning Wife's alleged waiver of the right to appeal as a result of having accepted the benefit of a portion of the judgment. Husband cites *Warren v. Warren*, 601 S.W.2d 683 (Mo.App. W.D.1980), for the proposition that a party who accepts the benefits of a judgment may not thereafter appeal. In support, he attaches three pages relating to two investment funds which were awarded to Wife. One of the pages purports to be a letter from Wife's attorney which references the two funds, requests "necessary forms and instructions," and concludes with the direction to "[r]emit the funds to my office."

Our review of the record does not indicate that these addendums to Husband's brief were part of the legal file presented to this court. Likewise, they were neither certified or agreed to as contemplated in Rule 81.15(c). Finally, they do not, on their face, indicate that the funds were actually received by Wife. Accordingly, we are unable to conclude that Wife has waived the right to appeal in this matter.

We reverse that portion of the judgment setting the amount of child support to be paid by Husband. The case is remanded for further proceedings consistent with this opinion. On remand the trial court is directed to determine the appropriate child support to be paid in accordance with *Woolridge*, discussed in this opinion; determine the responsibilities of the parties for mortgage payments on the property at 607 Lindenwood prior to its sale; and order Wife to execute a declaration relating to the income tax exemption for the children consistent with *Vohsen*, cited in this opinion. The trial court is directed to enter an amended judgment reflecting those findings and determinations. In all other respects, the judgment of the trial court is affirmed.[6]

---

**6.** We are compelled to remind counsel that Rule 84.04 is there for an important purpose in facilitating appellate review. Violations of that Rule impose unnecessary burdens on opposing counsel and the appellate court. In some cases violations make appellate review difficult at best. In others, the nature of the violation would require the appellate court to become an advocate for the party, a role the courts should not be asked or expected to assume. *Thummel*, 570 S.W.2d at 686. Although our appellate courts have previously issued innumerable warnings about such violations, they continue to occur, sometimes by the same counsel previously warned. Once again, we remind the bar, as well as *pro se* litigants, that Rule 84.04 violations may result in the failure to review points on appeal, or even the dismissal of appeals. Having made these

comments, in fairness, we should note that Wife's current counsel is not the same attorney who prepared her brief on appeal.