# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2173

_____

| | |
|---|---|
| Christian Lee Gander and | * |
| Melissa Renee Gander, | * |
| | * |
| Appellees, | * |
| | * |
| v. | * |
| | * |
| Harold Ray Gander, et al., | * |
| | * |
| Appellees, | * |
| | * |
| v. | * |
| | * |
| Anthony Livoti, Jr., P.A., | * |
| and Laird McMahen, | * |
| | * |
| Appellants. | * |

_____

Submitted:  January 12, 2001
Filed: May 14, 2001 - Corrected May 31, 2001

_____

Before LOKEN and HEANEY, Circuit Judges, and BATAILLON,[1] District Judge.

_____

BATAILLON, District Judge

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District
of Nebraska, sitting by designation.

Appellants, Anthony Livoti, Jr., and Laird McMahen, appeal from the district court's findings in favor of Appellees, Christian and Melissa Gander.  After careful review of the record, we affirm the district court.  Jurisdiction is invoked pursuant to 29 U.S.C. § 1144(a), ERISA § 514(a).

**Facts**

A decree of dissolution was entered in 1988 between Harold and Deborah Gander, parents to Christian and Melissa Gander.  Paragraph 10 of the Separation Agreement contained a clause that required Harold Gander to maintain a policy of insurance on Deborah.  That clause stated:

> Respondent [Harold Gander] agrees to keep in force a $75,000 insurance policy on his life with Petitioner [Deborah Gander] as sole beneficiary. Respondent agrees to keep in force a $2,500.00 life insurance policy on the life of each minor child with Petitioner as beneficiary.

In 1992 the agreement was modified.  Both Deborah and Harold agreed that the insurance money would be held in trust for their two children, Melissa and Christian Gander.  That modification as set forth in Articles 8 and 9 states:

> Petitioner [Deborah Gander] agrees that any and all sums received from the $75,000.00 life insurance policy in effect on Respondent's [Harold Gander's] life shall be held in trust for the benefit of the parties' children, Melissa Renee Gander and Christian Lee Gander, and said sums are to be used for the equal benefit of the children.  Any and all such sums remaining after the youngest child reaches the age of 25 shall be divided equally between the children.  Petitioner agrees to provide a yearly accounting to Bruce Edward Gander, Respondent's brother, for how any and all such sums are expended.  Respondent shall provide to Petitioner proof of insurance and beneficiary designation within 15 days of this agreement.

-2-

Respondent recognizes and releases Petitioner from any liability and responsibility should the $75,000.00 life insurance policy presently in effect be cancelled through no fault of Respondent; provided, however, that Respondent shall exercise any available right to continue said life insurance and keep it in effect (including, but not limited to, any COBRA rights.)

Harold Gander was an employee of Barnes Jewish Christian Center. ITT Hartford was the policyholder for Barnes Jewish Christian Center. Harold Gander maintained a life insurance policy through his employer with ITT Hartford in the amount of $75,000.00.

However, on or about June 20, 1996, Harold Gander assigned his rights in the policy to Anthony Livoti. This agreement, known as a viatical agreement or viatication, resulted in a payment of cash to Harold Gander.[2]

---

[2]*Eterna Benefits L.L.C. v. Hartford Life and Accident Insurance Co.* defines a viatical agreement as follows: "A viatical settlement is an agreement under which an insured sells a life insurance policy for an immediate payment approximating the discounted face value of the policy. An investor acquires an interest in a life insurance policy of a terminally ill person at a discount, depending upon the insured's life expectancy. When the insured dies, the investor receives the benefits of the insurance." 1999 WL 202592, at *1 (N.D. Tex. April 5, 1999) (internal citations omitted).

*See also,* Joseph M. Belth, ed. "The Frightening Secondary Market for Life Insurance Policies," THE INSURANCE FORUM, March 2000 at 1; Joseph M. Belth, ed., "Arson v. Murder: The Insurance Interest Anomaly and the Frightening Secondary Market for Life Insurance Policies," THE INSURANCE FORUM, December 2000 at 154; Joseph M. Belth, ed., "An Update on Florida's Viatical Reports," THE INSURANCE FORUM, October 2000 at 131; Joseph M. Belth, ed., "Who Should Regulate the Viatical Industry?", THE INSURANCE FORUM, January 2001 at 164; Joseph M. Belth, ed., "Federal Criminal Allegations in California Relating to Viatical Fraud," THE INSURANCE FORUM, July 2000 at 60; Joseph M. Belth, ed., "The First Viatical Fraud Convictions," THE INSURANCE FORUM, August 2000 at p. 84; Joseph M. Belth, ed.,

On July 2, 1996, Livoti named Laird McMahen as a beneficiary under this policy. Also, on June 20, 1996, Christian Gander signed a release/consent to permit the change of beneficiary. Harold Gander signed a release on behalf of his minor daughter, Melissa Gander. The validity of these releases will be discussed herein. On May 27, 1998, Melissa and Christian Gander filed suit asking for a declaration of their rights under the insurance policy.

The district court ordered that plaintiffs, Christian and Melissa Gander, are the sole joint beneficiaries of the ITT Hartford Policy No. OGL-205634 and would receive the entire proceeds of said policy upon the death of their father, Harold Gander. Further, the district court ordered that any and all documents which conflict with its court order regarding the sole joint ownership by Christian and Melissa Gander of the policy in question are void and unenforceable. The district court further awarded attorney's fees and costs.

## Discussion

### A. District Court Hearing

During a status hearing, both parties agreed to submit the case to the court on the basis of the briefs and affidavits. However, after reviewing the same, the court chose to order a hearing and to allow Deborah Gander to testify as a witness on the issue of intent with regard to both the 1988 and 1992 decree/modification. The district court allowed this evidence because it determined that the settlement agreement was ambiguous.

---

"The Huge Commissions Paid to Viatical Brokers," THE INSURANCE FORUM, June 2000 at p. 49; Joseph M. Belth, ed., "Life Partners and the Nonregulation of the Viatical Industry," THE INSURANCE FORUM, November 2000 at 133.

Livoti and McMahen contend that the district court erred in holding an evidentiary hearing once the parties agreed to submit the case on the basis of briefs and affidavits. They argue that fairness dictates that the court enforce the agreement of the parties to so submit the case. Christian and Melissa Gander argue that the court has discretionary authority pursuant to Fed. R. Civ. P. 16(a) to order the hearing.

The law is clear that stipulations of law are not binding on the court. *Sanford's Estate v. Comm'r. of IRS,* 308 U.S. 39, 51 (1939); *Harbor Ins. Co. v. Essman*, 918 F.2d 734, 738 (8th Cir. 1990); *Minneapolis Brewing Co. v. E. B. Merritt*, 143 F. Supp. 146, 149 (D.N.D. 1956). However, stipulations by the parties regarding questions of fact are conclusive. *Burstein v. United States*, 232 F.2d 19, 23 (8th Cir. 1956). Trial courts are bound by the facts established by the stipulation. *Id.* Valid stipulations are controlling and conclusive, and courts must enforce them. *Id.;* 83 C.J.S., Stipulations, § 12, p. 30. Courts cannot make contrary findings. *H. Hackfield & Co. v. United States*, 197 U.S. 442, 447 (1905). It appears that the parties agreed that they would submit affidavits and briefs to the court. However, nothing is set forth in the record before us that would indicate that a stipulation of facts exists. There might have been some tacit agreement at the status conference, but there is no record of what the parties stipulated to in terms of the facts of this case. Consequently, we find that there exists no stipulation that would be binding on the district court so as to preclude the taking of additional evidence.

## B. Extrinsic Evidence

Livoti and McMahen argue that the settlement agreement and 1992 modification were unambiguous, so no extrinsic evidence was needed. Parole evidence, they argue, was inappropriate in this case. They contend that the 1992 modification did not require Harold to name Melissa and Christian as beneficiaries under the policy. Instead, they argue, the settlement agreement required that the policy be maintained for the benefit of the ex-wife, Deborah, not the children. Melissa and Christian Gander argue that

-5-

Deborah Gander's testimony on intent was permissible, as the contract was clearly ambiguous. *Paglin* v. *Saztec International, Inc.*, 834 F. Supp. 1184, 1192 (W.D. Mo. 1993).

The district court concluded that the language of the settlement agreement and the decree of modification were ambiguous on the issue of whether the documents require Harold Gander to maintain the $75,000.00 life insurance policy with his children as the beneficiaries. Like the district court, we conclude that an ambiguity exists. The settlement agreement clearly stated that Deborah Gander was to be the beneficiary. However, the decree of modification lists Deborah Gander as beneficiary, but requires that Deborah Gander use the proceeds for the benefit of the children. She is required to account for all monies spent to Harold Gander's brother, Bruce Gander. We agree that under these circumstances extrinsic evidence is permissible. *John Morrell & Co. v. Local Union 304A*, 913 F.2d 544, 551 (8th Cir. 1990) (extrinsic evidence cannot be used to contradict intentions of the parties, but it can be used to demonstrate the ambiguity).

The district court ordered a hearing and allowed Deborah Gander to testify as to the parties' intentions in these agreements. She testified that under the decree of modification, it was the intention of Harold Gander to make the children the beneficiaries of the life insurance proceeds. Harold's brother was to oversee the accounting and assure that both children were treated equally. Deborah Gander was no longer a beneficiary under the policy, which is further substantiated by the elimination of the maintenance payments to her as set forth in the 1992 modification. We agree with the district court that the language of the 1992 modification of decree and the testimony of Deborah Gander support an interpretation that the beneficiaries under this modification were intended to be Christian and Melissa Gander.

### C. Specific Policy of Insurance

The Appellants next argue that there exists no evidence identifying a "specific" policy of insurance that Harold Gander was required to maintain on his two children. Melissa and Christian Gander argue that Deborah Gander specifically testified that the policy was for their benefit, and the only policy Harold Gander maintained was the one through his work at Barnes Jewish Christian Center.

Livoti and McMahen argue that the requirement of a "general policy of insurance" is not sufficient to establish a vested right in the policy on Melissa and Christian. *Prudential Insurance v. Gibson,* 421 S.W.2d 26, 33 n.3 (Mo. Ct. App. 1967). Because we have concluded that extrinsic evidence was permissible in this case, it was also permissible for the district court to determine which policy flowed to the benefit of Melissa and Christian Gander. *Principal Mutual Life Ins. Co. v. Karney*, 5 F. Supp. 2d 720, 729-39 (E.D. Mo. 1998). Deborah Gander testified that the only policy in effect at the time of the settlement agreement was the one through Harold Gander's employment; that the insurance and trust were created for the children, Christian and Melissa; and that Christian and Melissa were to be the beneficiaries of this policy. No contrary evidence was offered. We conclude, as did the district court, that the agreement between Harold and Deborah Gander referred to the Barnes Jewish Christian Center policy and not to a specific monetary amount of insurance. Consequently, we determine that the evidence adduced by the court was sufficient as a matter of law to identify the specific policy of insurance in question.

### D. Posthumous Child Support

It is unlawful under Missouri law to create an order for posthumous child support, an order that secures a child support obligation through life insurance. *Amyx v. Collins,* 914 S.W.2d 370, 372 (Mo. Ct. App. 1996). Such insurance is void under Missouri law where the liability for future child support stops upon the death of the

obligor. *Id.* Melissa and Christian argue that this is not posthumous child support, relying on *Wheeler v. McDonnell Douglas Corp.*, 999 S.W.2d 279 (Mo. App. 1999). They argue that the *Wheeler* court allows insurance provisions which are part of a voluntary property settlement derived from the parties. The *Amyx* case is distinguishable because it dealt with court-ordered insurance that became, in essence, child support. We conclude that the parties in this case voluntarily chose to include the insurance provision in their settlement agreement and, consequently, it is valid under Missouri law. *Wheeler v. McDonnell Douglas Corp.*, 999 S.W.2d at 287.

### E. Releases/Bona Fide Purchasers

We review the factual findings of the district court for clear error, and we do not reverse the findings of the district court unless we have a "'definite and firm conviction that a mistake has been made." *See Griffin v. City of Omaha*, 785 F.2d 620, 625 (8th Cir. 1986), *(quoting Anderson v. City of Bessemer City*, 470 U.S. 564 (1985)).

The district court found that Harold Gander fraudulently induced Christian Gander into signing the release. The court concluded that Christian did not know he was a beneficiary under the policy; that there was no consideration; that his father lied to him regarding signing the release; that his father breached the modification agreement; and that Harold Gander could not sign the release on behalf of Melissa Gander. Further, the court concluded that Harold Gander breached a confidential and fiduciary duty that he had with his children.

Livoti and McMahen first contend that Christian and Melissa Gander relinquished their claims under the Hartford policy by the execution of releases. On or about June 20, 1996, Harold Gander entered into an agreement with Mutual Benefits Corporation, wherein Harold Gander signed an Absolute Assignment and Beneficiary Form ("Assignment Agreement") in exchange for $31,500.00. Harold Ganders transferred and assigned all of his right, title and interest in the policy to Livoti. Then, on or about July 2, 1996, McMahen paid $52,817.00 to Mutual Benefits, a brokerage company, and Livoti named McMahen an irrevocable beneficiary of the policy.

On or about June 20, 1996, Christian Gander signed a release and consented to a change in the beneficiary. Christian was of legal age at the time he signed the release. On that same day Harold Gander signed a release as the "Parent and Guardian of Melissa Gander." Mutual Benefits then paid $31,500.00 to Harold Gander for the policy. Livoti and McMahen argue that the releases are valid, as Christian was 22 years of age at the time his was signed, and Harold Gander signed on behalf of his daughter.

Christian and Melissa Gander argue otherwise. Christian states that he was not told by his father that he was the beneficiary under the insurance policy and that he had no knowledge that he was in fact a beneficiary. Further, he contends that his father induced him into signing the release by promising money to purchase a truck. The money for the truck never materialized. Thus, he argues, there was no consideration for the signing of the release. Melissa, only 17 at the time, contends that her father had no legal authority to sign the release on her behalf. She was unaware that he signed it. Additionally, the modification required that the sums be held by Deborah Gander until the children reached the age of 25, at which time they would be distributed equally to

both children.  She further contends that both Viatical Settlements, Inc.[3] and Mutual, the brokers, had knowledge that her mother, Deborah Gander, should sign the release. Terrell Evans of Barnes Jewish Christian Center and Bill Crust of Viatical Settlements Inc. knew of this issue, and a statement made between them became part of the file. The statement reads:

> It states in the V.O.C. [Verification of Coverage] that this goes to the child in the Divorce Decree. . . . Make up an [sic] release and his former wife will sign it.  Her name is Deborah J. Gander.  The kids are almost of age anyway.  App. 120.

Melissa and Christian contend that Livoti and McMahen either knew Deborah's signature was required or the knowledge of Viatical and Mutual Benefits should be imputed to them.

Second, Livoti and McMahen argue that they are bona fide purchasers for value. The district court concluded that Livoti and McMahen did not have superior rights to Melissa/Christian Gander.  The court relied on the Ninth and Fourth Circuit cases that state a bona fide purchaser for value is one who purchases in good faith without notice of adverse claims.  *Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986); *In re Tudor Assoc. Ltd.*, 20 F.3d 115, 119 (4th Cir. 1994).  In the case before us, the district court found:

> It is clear from the record that both Viatical Settlements, Inc. ("Viatical"), which brokered the viatication with Mutual Benefits Corp. ("Mutual") and Mutual, which received funds for the policy from McMahen, who assigned it to Livoti, had notice of Plaintiffs' claim to the policy. Viatical's June 11, 1996 Addendum to its Group Policy Verification of Coverage (which apparently was completed by BJC) includes the

---

[3]Viatical Settlements, Inc. brokered the viatication with Mutual Benefits, Harold Gander and Livoti.

following notation as to question 12: 'Note: Record of Motion to Modify Divorce Decree with regard to children as beneficiaries of life insurance in September, 1992. It is unknown if any legal restriction is in force on employee's current coverage.' Pl. Ex. 4a at 3. In a June 13, 1996 letter to the President of Viatical, Bill Crust, Terrel Evans of BJC addressed this issue as follows: 'As relates to the legal instrument to which I referred in the addendum to question 12, I am unable to find any modification to or later document to cancel it. If there is an updated filing, I would think we should be sent a copy.' Pl. Ex. 5 at 1. Bill Crust communicated to Les Steinger, president of Mutual about this information as follows: 'It states in the V.O.C. [Verification of Coverage] that this goes to the child in the Divorce Decree. Make up an [sic] release and his former wife will sign it. He[r] name is Deborah J. Gander. The kids are almost of age anyway.

Dist. Ct. Op. at 11-12. The district court concluded that Viatical and Mutual had ample notice of the competing claims on Harold Gander's life insurance policy. The court then concluded that Livoti and McMahen had constructive knowledge of the plaintiffs' interests in the policy. *St. Paul Fire & Marine Ins. Co. v. F.D.I.C.*, 968 F.2d 695, 700 (8th Cir. 1992). Further, the district court found that the equity lies in favor of the plaintiffs, Melissa and Christian. We agree.

Livoti and McMahen were attempting to purchase the beneficial interest in a life insurance policy. They are allowed by law to purchase only what the owner has the legal right to transfer. They and their agents, the brokers of this contract, clearly understood the risk of purchasing a life insurance contract that may have been subject to restrictions due to the owner's divorce. The divorce decree notified the buyers that this policy was for the benefit of the owner's children until they reached age twenty-five. Neither of the children had reached that age and the youngest was a minor, legally incapable of transferring her interest in the policy. The appellants, Livoti and McMahen, purchased this contract of insurance at their own risk without adequately

-11-

investigating the right of the owner to transfer ownership. They are not bona fide purchasers of this contract and are not entitled to protection from the beneficiaries.

We have carefully reviewed the record and conclude that the findings of the district court are not clearly erroneous.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.